David **TUCKER** and William Earl Johnson, Plaintiffs-Appellants,

v.

UNITED PARCEL SERVICE, et al., Defendants-Appellees.

No. 80–7447.

United States Court of Appeals, Fifth Circuit.
Unit B

Sept. 28, 1981.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiffs-appellants.

Bradley, Arant, Rose & White, James P. Alexander, Robert K. Spotswood, Birmingham, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, and TJOFLAT and THOMAS A. CLARK, Circuit Judges.

GODBOLD, Chief Judge:

In this Title VII suit the district court, after a hearing focusing on the timeliness of the plaintiffs' EEOC charges, held the plaintiffs' charges untimely filed.[1] Earlier, after hearing, the court had declined to certify as a class the group of employees whom the plaintiffs sought to represent. We affirm the ruling on the class action and reverse on the timeliness issue.

United Parcel Service's Birmingham South facility hired plaintiffs Tucker and Johnson, who are black, as package car drivers to assist with peak season deliveries during the 1975 Christmas period. Of the 23 seasonal package car drivers hired for that period 19 were white and four black. UPS hired Christmas seasonal drivers on a temporary basis and generally dismissed them at the end of the Christmas season. Although the seasonal drivers had no contractual right to recall, UPS had a practice of retaining or recalling seasonal drivers who had impressed the company as desirable workers, if enough work developed after the peak season to require additional help.

The plaintiffs' last day of seasonal work was December 23, 1975. They were not told at that time that they were ineligible for reemployment or recall, and indeed thereafter (up to a time that the court determined to be January 2) were led to believe they might be recalled, depending upon the work requirements of the company.

After plaintiffs and other seasonals were dismissed in late December UPS retained five of the seasonal drivers, all whites, to continue working. Subsequently, from January 20 through February 17, UPS reemployed six of the white seasonal drivers it had previously dismissed. On March 1 it reemployed a black seasonal. On March 3 it reemployed another white.

Johnson filed an EEOC charge July 9, 1976, alleging that UPS had refused to recall him to work because of his race. The charge listed the discrimination as "continuing" in nature. Tucker filed a similar charge July 12. The district court, in oral findings, held that these charges had not been filed within the 180 day filing period under 42 U.S.C. § 2000e–5(e) because plaintiffs, on January 2, were aware that they were not going to be recalled.

In this situation, I conclude that there was an awareness that they were not

---

1. The plaintiffs do not question the district court's ruling that the statute of limitations had run on their claims under 42 U.S.C. § 1981.

going to be recalled by January 2, 1976 and that this event triggered the running of the hundred and eighty day period within which a discrimination charge could finally be filed, whether or not they had evidence at that time to support a belief, suspicion, or hunch that racial discrimination might be involved.

In this connection it is perhaps of some interest, although not critical to the Court's decision, that the Plaintiffs themselves recognize that as black employees of UPS of a seasonal nature, they were not common in terms of what the apparent general practice was, and to some degree, if there was a question about when one might reasonably have been, have had inquiry, or concern about discrimination, one may surmise that that might have reasonably occurred at the time they were told that they would no longer be eligible for recall, and should certainly be seeking other work.

■ In *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975), we held that the sufficiency of facts to trigger the charge-filing period may be measured subjectively or objectively, i. e.: the charge-filing period does not begin to run "until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." *See also Oaxaca v. Roscoe*, 641 F.2d 386 (5th Cir.1981); *Nilsen v. City of Moss Point*, 621 F.2d 117, 121 (5th Cir. 1980); *Chappell v. EMCO Machine Works Co.*, 601 F.2d 1295, 1303 (5th Cir.1979);

*Bickham v. Miller*, 584 F.2d 736 (5th Cir. 1978). Applying this test, the district court in this case found that the fact apparent to plaintiffs was their awareness on January 2 that they would not be recalled, and that this triggered the 180 days "whether or not they had evidence at that time to support a belief, suspicion, or hunch that racial discrimination might be involved." If the court meant by this that it would be apparent to *any seasonal employee* who is told that he is not going to be recalled that racial discrimination is involved, we disagree. Recall of a seasonal employee may depend upon many factors. The most significant one is, of course, whether when the bulge of seasonal business is over the volume of business supports a need for the employee. Also, of course, notice to a seasonal that he will not be recalled may be given because his performance has not been satisfactory.[2]

If the court meant that when *any black seasonal employee* is notified that he will not be recalled it would be apparent to him that the situation supports a charge of racial discrimination, we disagree. The "prudent person" requirement of *Reeb* is not triggered by a seasonal black employee's being notified of an otherwise unexceptional decision that he is not going to be recalled. It would be anomalous indeed if persons protected by the statute from racial discrimination are required to presume that they are being discriminated against.[3]

Thus, viewed subjectively and objectively, the facts in this case do not meet the "apparency" requirement of *Reeb* until plaintiffs learned that white seasonals were being recalled.

**2.** UPS attempted to show that plaintiffs' work record had not been satisfactory and that a notation on the clearance slip given each plaintiff when he was terminated put him on notice that the company considered his performance did not justify recall. The court rejected this theory.

**3.** It is unclear whether the second paragraph of the judge's oral order (described as not critical to the decision) rises to the level of a holding nor are we certain what it means. It seems to say that plaintiffs themselves, because they are black seasonals, knew that they were going to be treated differently than the "general prac-

tice" and, therefore, when given the word on January 2 should have thought about racial discrimination. If the court means that plaintiffs knew additional facts that should have triggered "apparency," the record does not reveal such facts; moreover, such an interpretation would be inconsistent with the final paragraph's reference to awareness of non-recall as the single trigger fact. If the court means that being a black seasonal employee of a company that also employs white seasonals, and being told one will not be recalled, constitutes enough to trigger "apparency," we have already rejected this as a matter of law.

On appeal UPS argues that facts other than the notice to black employees of non-recall support the court's conclusion though not referred to by the court in its oral order. One is that UPS had retained five Christmas seasonals, all of them white. UPS cites us no evidence that this was known to plaintiffs, nor can we find such evidence, nor can we say that this is something that would have been known to a prudent black employee in the position of plaintiffs.[4] The second factor urged is that Tucker testified that before he turned in his uniform he had learned that UPS had recalled white seasonals. This is disingenuous. Tucker testified that he returned his uniforms in late January or early February. The court rejected this testimony and found that the uniforms were returned January 2. The first recall of seasonals was January 20. Under the court's finding Tucker could not have known of any recall before January 2 because none had occurred.

Because of our decision we need not discuss plaintiffs' contention that the failure to recall them was a "continuing violation," *see, e. g., Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir.1980).

 Turning to the class action issue, plaintiffs sought to represent a class of all black seasonal employees at all UPS facilities within an administrative district covering Alabama and the panhandle of Florida. After a hearing on the class certification issue the district judge limited the potential class to the Birmingham UPS facility, determined that the plaintiffs' claims were typical only of seasonal package car drivers at this facility, and held that this class was so limited in number that joinder would not be impracticable. This decision was not an abuse of discretion.

REVERSED in part, AFFIRMED in part and REMANDED.

---

4. It begs the question to say that plaintiffs could have found this out upon inquiry. *Bickham v. Miller*, 584 F.2d 736 (5th Cir.1978) does not stand for a general proposition that any employee claiming a Title VII violation from an adverse employment decision has a duty to investigate to determine if there were unrevealed discriminatory reasons for the decision. *Bickham* is an exhaustion of remedies case. It did not involve timeliness of a complaint filed with EEOC under the 180-day filing provision but timeliness of an administrative complaint under the Civil Service Commission's Equal Opportunity Regulations, 5 C.F.R. Part 713 (1977) (currently codified at 29 C.F.R. Part 1613 (1981)), requiring that the complaint must be filed within 30 days. *Id.* at § 713–214(a)(i). This court held not plainly erroneous a decision of the district court that plaintiff, who knew that a board had been formed to pass on her application for a promotion and that the application had been denied, should have investigated the cause of her non-promotion and could not wait five months to file an administrative complaint that the board was composed of only males. The cryptic per curiam in *Bickham*, where the concern was timeliness of the required exhaustion of remedies, is not to be extended beyond its facts to create a duty of investigation by all Title VII claimants subjected to adverse employment decisions.