**Donna CLARK, Plaintiff,**

v.

**EMERSON ELECTRIC COMPANY, Defendant.**

**No. 90–899C(1).**

United States District Court, E.D. Missouri.

Dec. 5, 1990.

Michael Hoare, St. Louis, Mo., for plaintiff.

Thomas Berry, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, Mo., for defendant.

## ORDER AND MEMORANDUM

NANGLE, District Judge.

IT IS HEREBY ORDERED that defendant's motion to dismiss the first amended complaint be and is denied.

Plaintiff's first amended complaint contains a single count alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964. Plaintiff alleges that she was terminated from her position as an executive secretary in response to the discovery of her personal relationship with defendant's Director of Operations, but that he was merely placed on temporary probation and very shortly after promoted within the company.

Defendant has moved to dismiss the amended complaint on the ground that plaintiff did not file her underlying charge of discrimination with the Equal Employ-

ment Opportunity Commission ("EEOC") in a timely manner, as required by 42 U.S.C. § 2000e–5(e). Where there exists a state or local agency with authority of discrimination of the type charged, that provision requires a would-be plaintiff to file a charge with the EEOC:

> within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier. . . .

*Id.* Defendant argues that plaintiff's August 7, 1989, filing of a charge of discrimination was 306 days after plaintiff's termination on October 5, 1988, so that plaintiff's filing was untimely and the instant claim is barred. Plaintiff argues that the 300–day period did not commence until October 22, 1988, when she first learned that the male employee with whom she had had the relationship was not being terminated, in which case plaintiff filed on the 289th day of the 300–day period.

▉▉▉▉ Defendant is correct that, in most cases, the time begins to run as soon as the discriminatory act occurs and that fact is communicated to the plaintiff. *See, e.g., Delaware State College v. Ricks,* 449 U.S. 250, 259, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980); *Wilson v. Westinghouse Electric Corporation,* 838 F.2d 286, 288 (8th Cir.1988); *O'Connell v. Champion International Corporation, etc.,* 812 F.2d 393, 394 (8th Cir.1987). The Court agrees with plaintiff however that, where the possibly discriminatory nature of an employment decision is discernible only upon later events, the 300–day period does not commence until the plaintiff is or should be aware of those later events.[1]

In *Tucker v. United Parcel Service,* 657 F.2d 724 (5th Cir.1981), a black driver was one of 23 hired by defendant for the Christmas season with the understanding of pos-

sible retention after the holiday season. Plaintiff was not retained. Only after observing the racial pattern of seasonal drivers retained or recalled over the next several months was plaintiff alerted to the possibility that his dismissal was racially motivated. The Fifth Circuit followed a line of decisions in that circuit and held that the filing period began to run only after plaintiff learned or could have learned of the number of white drivers recalled, over two months after plaintiff's last day on the job. *Id.* at 726.

The Eighth Circuit adopted similar reasoning in *Moore v. Lion Oil Company,* 652 F.2d 746 (8th Cir.1981), in which the plaintiff alleged sex discrimination in her employer's decision not to approve the creation of a new position for her after a reorganization eliminated her former position. The Court determined, without discussion, that the statutory period commenced not upon the disapproval of the position for plaintiff, but upon the hiring of a man for same position approximately four months later. *Id.* at 748.

Defendant misses the point when it focuses on the fact that the *Moore* court rejected the plaintiff's attempts to delay the start of the limitations period even further, to the date on which plaintiff actually learned of the man's being hired. The Court rejected her equitable tolling argument because she had not been sufficiently vigilant in keeping herself apprised of relevant events, but nonetheless found that "[t]he allegedly unlawful act . . . occurred . . . when [the man] was hired by defendant. . . ." *Id.* at 748. Likewise here, the limitations period commenced when (1) defendant decided not to terminate plaintiff's male counterpart but instead ended his probation without further discipline, and (2) plaintiff timely learned of this fact. This occurred later than plaintiff's October 5 termination; plaintiff's affidavit indicates that defendant acted sometime between Oc-

---

**1.** The Court wishes to especially note the two-pronged nature of rule it has just stated: (1) the occurrence of later events which raise for the first time a suggestion that a seemingly innocent earlier act was discriminatory and (2) the plaintiff's earliest reasonable opportunity to become aware of those later events. The lack of one or the other of the two required circumstances is a characteristic shared by many of the cases defendant has cited in its memoranda, making them inapposite to the instant case.

tober 17 and October 22, and that she learned of the decision on October 22. Plaintiff's affidavit further demonstrates that she was sufficiently vigilant in keeping apprised of events relevant to her suspicion of discrimination.

The Court need not decide whether equitable tolling is at work, or whether the Court's determination is merely an application of the statutory limitations period based on generally accepted principles. Even if the former, the Court perceives no conflict with the decisions of the Eighth Circuit, which allow for equitable tolling in cases involving " 'actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.' " *Walker v. St. Anthony's Medical Center*, 881 F.2d 554, 557 (8th Cir.1989), quoting *Kriegesmann. v. Barry-Wehmiller Co.*, 739 F.2d 357, 358–59 (8th Cir.1984).

The determination that October 22 rather than October 5 is the trigger date for the 300–day limitations period is only half the battle, however. What both parties initially overlooked is the import of the existence of the Missouri Commission on Human Rights ("MCHR"), and its effect on the filing requirements.[2] As it does with most if not all state human rights commissions, the EEOC has a "work-sharing agreement" with the MCHR. This agreement makes possible what is loosely referred to as "simultaneous filing" with both the EEOC and the state commission. Such a filing was made here, as shown by the form on which the charge was made, which reads "Missouri Commission on Human Rights and EEOC."

■ Title VII prohibits, however, the filing of a charge with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated." 42 U.S.C. § 2000e–5(c). Where the state proceedings extend beyond a 60–day period, the EEOC "filing" is held for that time in "suspended animation" and is not officially filed in the statutory sense until the expiration of 60 days. *Love v. Pullman Company*, 404 U.S. 522, 526, 92 S.Ct. 616, 618–19, 30 L.Ed.2d 679 (1972). In sum, in a "deferral" state such as Missouri, in order to be certain to preserve his federal rights, a would-be plaintiff must file his charge of discrimination within 240 rather than 300 days of the discriminatory practice; if the charge is filed between 240 and 300 days after the trigger date, it is timely only if the state commission's proceedings terminate before the 300th day. *Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980).

■ Plaintiff filed her charge on the 289th day of the 300–day period. The parties' supplemental memoranda filed November 21, 1990, indicate the parties' agreement that the charge, though physically filed with the EEOC, was simultaneously filed with the MCHR the same day, pursuant to § II.A of the Worksharing Agreement between the MCHR and the St. Louis Office of the EEOC (Plaintiff's Exh. 2 filed November 21, 1990) and 8 C.S.R. 60–2.025(4).

Furthermore, pursuant to the Worksharing Agreement, the MCHR's proceedings effectively terminated on the date of filing, so as to allow the EEOC's immediate processing of the charge: "Specifically where MCHR is presented with a charge more than 180 days old, but less than 300 days, it will take the charge and *waive jurisdiction immediately to EEOC for it to process.*" Plaintiff's Exh. 2, § II.D. *See also* § III.C of the Worksharing Agreement:

> In order to facilitate early resolution of charges MCHR waives the rights granted to it under Section 706(c) and (d) of Title VII to have an exclusive opportunity to resolve for a period of 60 days the charges assigned to the EEOC by this agreement.

Plaintiff's Exh. 2.

That being the case, plaintiff timely filed her charge of discrimination so as to preserve her rights under Title VII, given the

---

**2.** The Court therefore ordered both parties to file supplemental memoranda addressing this consideration. *See* Order and Memorandum of November 9, 1990.

Court's determination that the 300–day period commenced on October 22, 1988. Defendant's motion to dismiss is therefore denied.