Thomas J. **PIRAINO**, Plaintiff,

v.

**UNITED STATES POSTAL SERVICE**, Defendant.

No. 1:99–CV–19.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 8, 1999.

889

Robert J. Smith, Attorney at Law, Thomas J. Piraino, Beaumont, TX, for Thomas J. Piraino, plaintiff.

Andrea Hedrick Parker, U.S. Attorney, Beaumont, TX, for United States Postal Service, defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

SCHELL, Chief Judge.

This matter is before the court on Defendant United States Postal Service's Motion to Dismiss (Dkt.# 13), filed on May 28, 1999. Plaintiff Thomas J. Piraino filed a response on August 5, 1999. After consideration of the motion, response and applicable law, the court is of the opinion that Defendant's Motion to Dismiss should be GRANTED.

### I. Factual Background

Plaintiff, an African–American male, was employed by the United States Postal Service ("Postal Service") in 1963. In 1978 Plaintiff accepted a disability retirement from the Postal Service due to knee injuries. Plaintiff does not allege that his 1978 discharge from the Postal Service was wrongful. In 1988 Plaintiff began requesting reinstatement with the Postal Service in a light duty capacity, and Plaintiff was denied reinstatement. Plaintiff subsequently learned that a former Postal Service employee, Pat Self (a white male), who had suffered an injury was reinstated on December 25, 1992. Because Self was reinstated and Plaintiff was not, Plaintiff filed EEO Claim 1–G–000–1281–93 on March 8, 1993, alleging discrimination based on race, color and handicap. After exhausting the administrative process, Plaintiff timely filed a lawsuit on July 12, 1995, against the Postmaster General in this court. See Piraino v. Runyon, Civil Action No. 1:95–cv–409 ("1995 suit"). In the 1995 suit, Plaintiff alleged that he applied for reinstatement and was rejected, that white employees with similar disabilities had been reinstated, and that he had been retaliated against for filing claims with the EEOC. See Pl.'s Original 1995 Compl. at 2; Transcript of March 4, 1994 Hearing Before Anthony J. Randall Administrative Judge at 13. On December 8, 1995, following a hearing, the 1995 suit was dismissed "without prejudice" for failure to perfect service on the defendants. Plaintiff took no further action regarding that suit.

Over two years later, in February 1998, Plaintiff allegedly requested reinstatement with the Postal Service and Plaintiff's request was again denied. On May 5, 1998, Plaintiff filed EEO Claim 4–G–770–0502–98 alleging that he had been discriminated against by the U.S. Postal Service in violation of Title VII since 1988. On July 7, 1998, the Postal Service issued a final agency decision letter dismissing the 1998 claim as identical to prior EEO claims filed by Plaintiff and notifying Plaintiff that he had a "right to sue" within 90 days of receipt of the letter. On October 5, 1998, Plaintiff tendered for filing in this court the complaint that is the basis for this suit, which was eventually filed on January 5, 1999. Plaintiff filed his complaint pro se under Title VII of the Civil Rights Act of 1964. Plaintiff alleges that the Postal Service discriminatorily refused to reinstate him at various times beginning in 1988 and most recently in 1998 and that the Postal Service had reinstated white employees with disabilities similar to Plaintiff's. See Pl.'s Original 1999 Compl. at 2; Pl.'s Resp. to Def.'s Mot. at 1–2. Plaintiff also alleges that L.G. Slider, the Postmaster in Beaumont, had told someone that if Plaintiff would drop the EEOC complaint, he would

consider reinstating him. *See* Pl.'s Original 1999 Compl. at 2.

In response, Defendant filed its "Motion to Dismiss" under FED. R. CIV. P. 12(b)(1) asserting that the present claim is the same claim that was the subject of the 1995 suit and moving to dismiss based solely on Plaintiff's failure to file the present suit, as required by 42 U.S.C. § 2000e–16(c), within 90 days of receiving the "right to sue" letter on the original 1995 complaint. In other words, Defendant contends that the present claim is an attempt to circumvent the limitations period by refiling a claim that was dismissed and is now time-barred. On June 30, 1999, Plaintiff filed his "Response to Defendant's Motion to Dismiss," asserting that the present claim is based on the ongoing conduct of the Defendant and that the current suit is merely similar to the prior suit and therefore is not time-barred.

## II. Standard for Rule 12(b)(6) Motion to Dismiss

Defendant filed its Motion to Dismiss pursuant to Rule 12(b)(1) based on Plaintiff's alleged failure to comply with Title VII limitation periods. In Title VII cases against federal agencies, such as the Postal Service, time limits for filing an administrative claim or a civil action are not jurisdictional, but rather operate as a statute of limitations, and are subject to waiver, estoppel and equitable tolling. *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (regarding civil actions); *Munoz v. Aldridge*, 894 F.2d 1489, 1494 (5th Cir. 1990) (regarding administrative claims). "Although the ninety-day filing requirement is not jurisdictional, in the absence of extenuating circumstances, 'it is a statutory precondition to the maintenance of any action under Title VII' in federal court." *Santerre v. Agip Petroleum Co.*, 45 F.Supp.2d 558, 574 (S.D.Tex.1999) (citation omitted). Therefore, failure to comply with a statute of limitations is grounds for dismissal, but the motion is properly decided under Rule 12(b)(6), not Rule 12(b)(1). *See Maturi v. Harvey Hotels*, No. 3:96– CV–2196G, 1997 WL 75238 at *2 (N.D.Tex. Feb.14, 1997).

FED. R. CIV. P. 12(b)(6) provides that a party may move a court to dismiss an action for "failure to state a claim upon which relief can be granted." On motion under Rule 12(b)(6), the court must decide whether the facts alleged, if true, would entitle the plaintiff to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is proper only if there is either (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). The court also may "consider matters of which [it] may take judicial notice." *Lovelace*, 78 F.3d at 1017–18; FED. R. EVID. 201(f). Matters of public record, items appearing in the record of the case, and exhibits attached to the complaint also may be considered. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990).

The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The well-pleaded facts must be reviewed in the light most favorable to the plaintiff. *See Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995). A plaintiff, however, must allege specific facts, not conclusory allegations. *See Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations and unwarranted deductions of fact are not admitted as true. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

 "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *Kaiser Aluminum,* 677 F.2d at 1050. " 'The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.' " *Kaiser Aluminum,* 677 F.2d at 1050 (citation omitted).

### III. Discussion

#### A. Title VII Limitation Periods

The court begins its analysis with the law regarding procedures and time limits for filing a Title VII civil action against a federal agency, which are different from the rules governing suits against private entities. A claim of discrimination against a federal agency is governed by 42 U.S.C. § 2000e–16 and the extensive EEOC regulations found in 29 C.F.R. §§ 1614.101–.110, 1614.401–.607.

Within 45 days of the alleged discrimination, the aggrieved person ("the employee") must report the grievance to an Equal Employment Opportunity Counselor of the agency charged with discrimination. *See* 29 C.F.R. § 1614.105(a)(1) (1998). If the matter cannot be resolved within 30 days, the employee is notified in writing of his right to file a discrimination complaint (EEO claim) within 15 days after receipt of the notice. *See id.* § 1614.105(d). After an EEO claim is filed, the agency conducts an investigation and at the conclusion of that investigation, the employee has the right to request a hearing before an administrative law judge or to receive an immediate final decision from the agency. *See id.* § 1614.108. Even if the hearing is held, as in the present case, the agency issues a final agency decision that discrimination did or did not exist. *See id.* § 1614.110. The final agency decision let-ter informs the employee that he has two options if he is not satisfied with the decision: 1) to appeal to the EEOC within 30 days of receipt of the final agency decision, *see id.* § 1614.402; or 2) to commence a civil action within 90 days of receipt of the final agency decision. *See* 42 U.S.C. § 2000e–16(c). If the employee elects to appeal to the EEOC, as in this case, he must file a civil action within 90 days of receipt of the EEOC final decision letter or 180 days from the date of filing an appeal with the EEOC if there has been no final decision. *See* 29 C.F.R. § 1614.408 (1998).

#### B. Issues Presented

 Defendant moves for dismissal based on the assertion that Plaintiff is attempting to refile the 1995 suit that was dismissed and that the present suit is untimely since it is well past 90 days from the date Plaintiff received the original "right to sue" letter on which the 1995 suit was based. Undoubtedly, Plaintiff has failed to timely sue on the refusal of his original request for reinstatement in 1988. That refusal was the subject of Plaintiff's timely filed suit in 1995, but the 1995 suit was dismissed for failure to perfect service and that claim is clearly time-barred.[1]

In the current suit, Plaintiff asserts violations that are of exactly the same character as the violations alleged in the 1995 suit, i.e., that he applied for reinstatement and was rejected, that white employees with similar disabilities have been reinstated, and that he has been retaliated against for filing claims with the EEOC. *See* Pl.'s Original 1995 Compl. at 2; Transcript of March 4, 1994 Hearing Before Anthony J. Randall Administrative Judge at 13. The only differences in the current suit are that Plaintiff alleges that he reapplied in February 1998 and was rejected again and

---

1. The 90 day time limit for filing a lawsuit based on that claim has obviously expired because Plaintiff took no action to pursue that claim or any discrimination claim against the Postal Service for approximately two years after the 1995 lawsuit was dismissed. Fur-thermore, that lawsuit was, in effect, dismissed with prejudice since it was dismissed after the time limits for filing had expired. *See McNeal v. Papasan,* 842 F.2d 787, 793, n. 1 (5th Cir.1988).

that since the original lawsuit, additional white employees with disabilities similar to Plaintiff's have been reinstated.·

 Plaintiff's claims in the current suit are identical in substance to those alleged in 1995, which as already noted, are time-barred. Therefore, Plaintiff's current suit is only timely if he shows that the violations alleged in the current suit constitute a different or continuing claim under the "continuing violations" theory, which can act to extend the time for filing a Title VII claim, or if there is some equitable basis to excuse the late filing such as waiver, estoppel or equitable tolling. However, Plaintiff's pleadings are devoid of any basis for waiver, estoppel, or equitable tolling. Furthermore, it is doubtful that any reason could be presented that would convince the court of sufficient reasons for a two-year lapse in pursuing a claim that was originally dismissed for failure to perfect service on the defendants. The doctrine of equitable tolling "does not permit plaintiffs to suspend the time for filing discrimination complaints indefinitely when they discover instances of disparate treatment of other employees *months or years* after their discharge." *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir.1992) (emphasis added). Thus, the court's analysis will be limited to determining whether Plaintiff's claims constitute a "continuing violation."

### C. Continuing Violation Doctrine

 Generally, the limitation period for filing an administrative complaint under Title VII begins to run from the date of the alleged unlawful employment practice. *See* 29 C.F.R. § 1614.105(a)(1) (1998). However, a "continuing violation," meaning a series of related acts, one of which falls within the limitations period, can extend the time to file a claim under Title VII. *See Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 537 (5th Cir.1998). If a violation is determined to be "continuing," the statutory limitations period runs from the date the plaintiff has knowledge of the discriminatory character of the action. *See id.* (citing *Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir.1985)). The continuing violation doctrine deals with two types of cases:

> The first includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation. The second type of continuing violation is one in which an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations.

*Hendrix v. City of Yazoo City Mississippi*, 911 F.2d 1102, 1103 (5th Cir.1990) (citing as examples of the closely related type of violation: *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); *Glass*, 757 F.2d 1554; *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir.1983); and citing as examples of the "separate repeated" type of violation: *Jackson v. Galan*, 868 F.2d 165 (5th Cir.1989); *Perez v. Laredo Junior College*, 706 F.2d 731 (5th Cir.1983)).[2]

 The courts do not always clearly distinguish between the two types of continuing violations in doing the analysis because there are often elements of both types that are difficult to separate in a given claim. However, it is clear that, at least regarding the "closely related" type of violation, a court must engage in a fact specific inquiry involving several factors including the following three:

> The first is subject matter. Do the alleged acts involve the same type of dis-

---

**2.** *Hendrix* was brought under the Fair Labor Standards Act but the continuing violations doctrine has been applied to several different kinds of cases including Title VII cases where the doctrine was primarily developed. *See, e.g., Berry*, 715 F.2d 971; *Perez*, 706 F.2d 731.

crimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring ... or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is the degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Huckabay v. Moore,* 142 F.3d 233, 239–40 (5th Cir.1998) (holding that plaintiff's hostile environment claim constituted a continuing violation but that a demotion and a failure to promote were discrete isolated occurrences that put employee on notice that a cause of action had accrued and were therefore not continuing violations) (quoting *Berry,* 715 F.2d at 981).

 In addition to the three factors discussed above, a "closely related" type of continuing violation also requires a "persisting and continuing system of discriminatory practices." *Id.* (quoting *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997)). "A plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation." *Id.* (citing *Berry,* 715 F.2d at 981).

 The "separate repeated" type of continuing violation is an exception to the rule that discrete acts of a permanent nature such as a refusal to hire, "do not generally trigger application of the continuing violations doctrine." *Washington v. Touro Infirmary, Inc.,* No. CIV.A.97–38235, 1998 WL 754540, at *4 n. 1 (E.D.La. Oct.26, 1998) (citing *Huckabay,* 142 F.3d at 239). The "separate repeated" type of continuing violation is a series of repeated employment decisions, for example, a refusal to hire or rehire or repeatedly hiring white applicants after refusing to hire black applicants with the same qualifica-

tions. Such violations are considered separate and distinct acts of discrimination from which "the limitations period begins anew with each violation." *Perez,* 706 F.2d at 733 (holding that if college discriminatorily denied faculty member additional compensation, there could be a continuing violation every time another faculty member was paid on a different basis); *see also Galan,* 868 F.2d at 168 (holding that repeated garnishment of plaintiff's wages created a continuing violation of plaintiff's due process rights).

 As with the "closely related" type of continuing violation, the time at which the employee has *knowledge* of the discriminatory nature of the employment practice is important. *See Tucker v. United Parcel Service,* 657 F.2d 724, 726 (5th Cir.1981) (holding that the limitations period did not begin to run when the plaintiffs learned they were not being recalled, rather, the limitation period only began running after the plaintiffs learned that white seasonal employees were being recalled).

There are some cases that imply that a timely claim can be based on a "separate repeated" violation, even when a plaintiff had sufficient knowledge of discrimination to file a claim upon discovering the initial act. But those cases also seem to require that the repeated act be a result of a formal and continuously maintained illegal employment practice that caused the initial violation and the repeated violations. *See Perez,* 706 F.2d at 733–34 ("plaintiff must establish that the unconstitutional or illegal act was a part of 'standard operating procedure,' a fixed and continuing practice.") (citation omitted); *see also Roberts v. North Am. Rockwell,* 650 F.2d 823, 826–27 (6th Cir.1981) (holding that defendant did not have to file suit when she was initially discriminated against because the limitations period did not begin to run as long as an ongoing express policy of not hiring women was in effect) (cited with approval in *Perez,* 706 F.2d at 734).

### D. Application of the Continuing Violation Doctrine to Plaintiff's Claims

When considering a motion to dismiss based on time limits, the court must " 'identify precisely' the nature of the complaint and when the reprobated act occurred." *Perez*, 706 F.2d at 734 (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). Whether the court identifies the claim here as a refusal to hire based on racial discrimination or retaliation, or as the rehiring of white employees with similar disabilities, this claim is not the type of violation that can be revived by the continuing violations theory.

Plaintiff's allegations that the Postal Service continues to discriminatorily deny him employment and retaliate against him for filing EEOC claims do not support a continuing violation theory. This can be seen from application of the three *Berry* factors. *See Berry*, 715 F.2d at 981. While it is true that the continued denials of reinstatement do constitute the same type of violation, thus satisfying the subject matter factor, the other two factors indicating a continuing violation are not present. Plaintiff's initial denial of reinstatement in this case was an isolated employment decision. It was a discrete and permanent event, which clearly alerted Plaintiff to any discriminatory action as evidenced by his filing suit based on the denial in 1995. Subsequent denials of reinstatement are merely the continuing effects of the original decision. If continued denials of unemployment are merely the natural consequence of the initial denial of reinstatement, there is no continuing violation. *See Ricks*, 449 U.S. at 258, 101 S.Ct. 498. Furthermore, Plaintiff has made no allegation of "an organized scheme of discrimination leading to and including the present violation." *Huckabay*, 142 F.3d at 239 (citing *Berry*, 715 F.2d at 981). Viewed in the most favorable light, nothing in Plaintiff's pleadings indicates that the most recent denial of employment is based on anything other than the "res judicata" effect of the earlier decision not to rehire.

Plaintiff's allegation that additional white persons with similar disabilities had been hired since the 1995 lawsuit also does not state a continuing violation. This allegation is similar to the kind of ongoing violation alleged in *Perez*, where the continued payment of a higher wage to other faculty members was held to be a possible continuing violation. *See Perez*, 706 F.2d at 734–35; *see also NLRB v. Textile Machine Works*, 214 F.2d 929, 932 (3d Cir. 1954) ("[A] separate unfair ... practice of refusal to hire occurs when another applicant for employment is hired instead of the applicant discriminated against."). However, as noted above, in cases like the present case, where a plaintiff has notice of the discriminatory nature of the initial violation, plaintiffs have been allowed to file a claim based on subsequent repetitions of the violation only where a formal policy of discrimination was present. Plaintiff has not alleged any such organized scheme of discrimination. Moreover, even if Plaintiff had alleged such a systematic practice, in neither *Perez*, nor any other case where a continuing violation has been found, did the plaintiff, as here, file a suit, allow the suit to be dismissed for lack of diligence, and then attempt to file an identical suit over two years later. That brings us back to the most important factor militating against a finding of either type of continuing violation in this case: Plaintiff knew of the acts that alerted him to the discrimination alleged in this case when he filed suit in 1995.

"The core idea of the continuing violations theory ... is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Huckabay*, 142 F.3d at 238 (quoting *Messer*, 130 F.3d at 134). Plaintiff had full knowledge of all the claims he asserts in the current lawsuit— the original denial of reinstatement, the statements evidencing retaliation allegedly

made by his Postal Service supervisor and the reinstatement of a white employee with similar disabilities—prior to filing his 1995 suit. In situations where courts must determine which of several different events trigger the running of limitations, "the focus is on what event, in fairness and logic, should have alerted the average layperson to protect his rights." *Id.* Here, Plaintiff was clearly alerted that he must act to protect his rights in 1995. He did act by filing the 1995 lawsuit based on the same allegations he asserts here, and he gave up the opportunity to protect that right by failing, without cause, to simply perfect service on the defendants. In none of the cases cited above where continuing violations were found to extend the statute of limitations did the plaintiff attempt to refile a two-year-old claim after allowing his lawsuit to be dismissed for lack of diligence. "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Ricks,* 449 U.S. at 256–57, 101 S.Ct. 498. Making an exception to that policy based on a "continuing violation" theory requires a showing of equitable considerations that are not present in this case.

## IV. CONCLUSION

For the foregoing reasons, the court is of the opinion that Defendant's motion should be GRANTED. Plaintiff's suit is accordingly dismissed for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).