**SEARCH INTERNATIONAL, INC. and Kent Little, Plaintiffs,**

v.

**SNELLING AND SNELLING, INC., Defendant.**

**No. 3:00–CV–2598–R.**

United States District Court, N.D. Texas, Dallas Division.

April 10, 2001.

Motion granted.

Sam E. Rowland, Law Office of Sam E. Rowland, Bryan, TX, for Plaintiffs.

Thomas A. Graves, Figari, Davenport & Graves, Dallas, TX, for Defendant.

## MEMORANDUM OPINION

BUCHMEYER, Chief Judge.

On November 29, 2000, Plaintiffs Search International Inc. and Kent Little filed suit in this Court against Defendant Snelling & Snelling, Inc., alleging violations of 15 United States Code section 1 (Sherman Anti–Trust Act), and violations of Texas Business and Commerce Code sections 15.05 (unlawful practices in restraint of trade) and 17.46 (Texas Deceptive Trade Practices Act). Now before this Court is Defendant's **Motion to Dismiss** the Sherman Anti–Trust Act claim pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on January 29, 2001. Also before this Court is an **Application to Stay and Compel Mediation and Arbitration** for the Texas Business and Commerce Code claims, filed on January 29, 2001. For the reasons stated below, the Motion to Dismiss is **GRANTED** and the Anti–Trust claim is **DISMISSED WITH PREJUDICE.** The Motion to Stay and Compel Mediation and Arbitration is **DENIED** and the Texas Business and Commerce Code claims are **DISMISSED WITHOUT PREJUDICE.**

### Background

The Plaintiffs filed their Original Complaint on November 29, 2000 and the Defendant filed the Motion to Dismiss that is now before this Court on January 29, 2000. Subsequently, the Plaintiffs filed their First Amended Original Complaint (Amended Complaint) on February 23, 2001. According to the Plaintiff's one-page response to the Defendant's Motion to Dismiss, the Amended Complaint cures any defects in the Original Complaint. Therefore, this Court will consider the facts contained in the Amended Complaint and the attached Exhibits in ruling on this Motion.

Defendant, Snelling & Snelling, Inc. (Snelling), has been a franchisor of career and temporary personnel staffing businesses since 1951. Defendant is incorporated in the state of Delaware and has franchises throughout the United States. Defendant's principal place of business is located in the state of Texas. In 1994, Defendant began to acquire corporate stores in addition to operating through its franchises. Some of the corporate stores were purchased from existing franchisees and some were purchased from competitors of existing franchisees. Many of the corporate stores were located in close proximity to other Snelling franchises. During this time period, Snelling continued to enter into agreements with new franchisees.

All Snelling franchisees are required to sign Snelling's standard franchise agreement. According to the Plaintiffs, this agreement is imposed upon potential franchisees and contains provisions which render it unconscionable and enable Snelling's corporate stores to compete unfairly with Snelling's franchises. The Amended Complaint cites the following clauses in support of this assertion:

1) Paragraph 4(a) and Paragraph 3 of Rider A provide that Snelling is allowed to establish any personnel services business or Snelling operated business at any time and in any location without restriction. Amended Complaint, Exhibit B.

2) Paragraph 4(b) provides that Snelling and its franchises may solicit and service any clients, job-seekers, temporary employees, or employees, wherever located worldwide. Paragraph 4(b) further provides that franchisees are only allowed to operate from office locations approved by Snelling. *Id.*[1]

3) Paragraph 4(e)(1) provides that Snelling is the sole owner of all goodwill associated with Snelling's proprietary marks and that the franchisee is prohibited from using any proprietary marks other than Snelling's. *Id.*

4) Paragraph 4(e)(5) provides that Snelling owns all of the improvements, enhancements, advertising, public relations programs, or inventions developed by any franchisee in connection with the franchisee's personnel services office. *Id.*

5) Paragraph 7(c)(1) provides that all clients who use a franchisee's services are solely Snelling's clients. *Id.*

6) Paragraph 7(d)(1) provides that all franchisees must have their clients submit payments for services rendered directly to Snelling. This paragraph also allows Snelling to contact franchise clients directly regarding payment. *Id.*

7) Paragraph 9(e) provides that Snelling has the right to use all financial and operational information in any manner that Snelling deems appropriate. *Id.*

8) Paragraph 12(d) provides that franchisees are not allowed to compete with Snelling in any capacity under any personnel services business unless that business is specifically licensed by Snelling. *Id.*

Plaintiff Search International Inc. (Search), through Plaintiff Kent Little, signed the above-described franchise agreement on November 1, 1996. The Amended Complaint explains that because Search was forced to sign the franchise agreement, Search was limited in its ca-

---

**1.** Plaintiff's Amended Complaint did not quote or accurately paraphrase this clause. Instead, the text of the Amended Complaint describes this paragraph as providing that Snelling and its franchises compete on a nationwide basis for clients. This Court finds that description somewhat misleading based on the actual text of the clause.

pacity to expand to its full business potential. The one example of this alleged frustration cited in the Amended Complaint concerns the effects of Snelling's territorial restriction power on Search's ability to expand into Richardson, Texas. Snelling owns and operates a corporate store in Richardson, Texas. According to the Plaintiffs, Snelling is unable to expand beyond that store and is therefore unable to meet Richardson's needs for contract placement of information and technology personnel. Search, on the other hand, is "ready, willing, and able" to open an office in Richardson. Amended Complaint p. 15. However, Snelling has exercised its right under the franchise agreement to prohibit Search from opening a store in Richardson. The Plaintiffs claim that this action has caused Search significant financial damage and has injured the public because Richardson is deprived of a needed permanent professional placement and contract office specializing in the placement of information and technology personnel.

Although no concrete examples are provided, Plaintiffs also allege that Snelling restrains the competitive abilities of its other franchisees by using information acquired pursuant to the franchise agreement to benefit its corporate stores. In addition, Plaintiffs allege that Snelling has refused to allow other franchisees to open stores in areas in which Snelling has corporate stores or in areas in which Snelling wishes to expand its territories in the future. Finally, Plaintiffs allege that Snelling continues to open corporate stores in areas in which Snelling franchises already exist.

## Discussion

## I Motion to Dismiss the Sherman Anti–Trust Act Claim

### A 12(b)(6) Standard

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Piraino v. United States Postal Service*, 69 F.Supp.2d 889, 894 (E.D.Tex.1999) (quoting, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Because of this high standard, "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982) (citation omitted).

In ruling on a 12(b)(6) motion the district court must accept the truth of the plaintiff's allegations or rely upon only those matters outside of the pleadings with respect to which there is no genuine issue of fact. *See Espinoza v. Missouri Pacific Railroad Co.*, 754 F.2d 1247, 1249 (5th Cir.1985). Moreover, the allegations set forth in the Complaint should be construed liberally in favor of the Plaintiff. *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d at 1050 (citing, e.g., *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir.1981)).

### B Application

■ Section 1 of the Sherman Anti–Trust Act provides in pertinent part: "Every contract, combination in the form of a trust, or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. In order to recover damages for a violation of Section 1, a plaintiff must prove "(1) the existence of an agreement (2) which unreasonably restrains trade (3) to the damage of the plaintiff." *Abadir & Company v. First Mississippi Corp.*, 651 F.2d 422, 424 (5th Cir.1981). Construing the Amended Complaint liberally in favor of the Plaintiffs, "it appears beyond doubt" that the Plaintiffs cannot prove the exis-

tence of an agreement as required for recovery under Section 1. *Piraino*, 69 F.Supp.2d at 894 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Snelling and its franchisees constitute a "single economic unit" incapable of conspiring under Section 1, and even if Snelling and its franchisees were capable of concerted activity, the Amended Complaint fails to present any evidence of an agreement to restrain trade in this case. *Eleven Line, Inc. v. North Texas Soccer Association, Inc.*, 1997 WL 135684, *7 (N.D.Tex.1997).

"The Sherman Act contains a 'basic distinction between concerted and independent action.'" *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 766, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (quoting, *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)). Unlike its counterpart in Section 2, Section 1 of the Act does not reach conduct that is "wholly unilateral." *Copperweld Corp.*, 467 U.S. at 768, 104 S.Ct. 2731 (quoting, *Albrecht v. Herald Co.*, 390 U.S. 145, 149, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968)). The United States Supreme Court has explained that the anti-competitive dangers inherent in concerted activity far outweighs that which is present with unilateral action and thus unilateral action must result in the threat of a monopoly to violate Section 2, while concerted action under Section 1 need only unreasonably restrain trade. *See Copperweld Corp.*, 467 U.S. at 768, 104 S.Ct. 2731.

When two corporate entities are viewed as a common enterprise, agreements between such entities are deemed to be unilateral; such corporations are not capable of concerted activity in violation of Section 1. *See id.* at 768–76, 104 S.Ct. 2731; *see also Eleven Line, Inc.*, 1997 WL 135684 at *6; *Williams v. Nevada*, 999 F.2d 445, 447 (9th Cir.1993). This rule is primarily at-tributed to the United States Supreme Court's holding in *Copperweld Corporation v. Independence Tube Corporation*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628. In *Copperweld*, the Court held that the coordinated activity of a parent corporation and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of Section 1. *Id.* at 771, 104 S.Ct. 2731. The Court explained that the substance of each corporate relationship must be examined to ensure that Congress's intent to distinguish between unilateral and concerted conduct is furthered in the given case instead of applying a per se rule to certain corporate structures—an approach that might frustrate Congressional intent. *See id.* at 776, 104 S.Ct. 2731.

In *Eleven Line, Inc. v. North Texas State Soccer Association, Inc.*, this Court explained that *Copperweld's* emphasis on the substance of a corporate relationship over the form of the relationship's structure has been extended by the lower courts to other situations in which affiliated corporate entities have a "complete unity of interests." *Eleven Line, Inc.*, 1997 WL 135684 at *6 (citing, *Seabury Management, Inc. v. PGA*, 878 F.Supp. 771, 777 (D.Md.1994)). In particular, at least three courts have held that a franchisor is incapable of conspiring with its franchisee under the *Copperweld* rationale. *See Williams v. Nevada*, 999 F.2d at 447; *Hall v. Burger King Corporation*, 912 F.Supp. 1509, 1548 (S.D.Fla.1995); *St. Martin v. KFC Corp.*, 935 F.Supp. 898, 906 (W.D.Ky.1996); *Cf. Motive Parts Warehouse v. Facet Enterprises*, 774 F.2d 380, 387–88 (10th Cir.1985)(holding that prospective franchisees can conspire with a prospective franchisor when negotiating for the franchise agreement).

■ Although the Supreme Court held as a matter of law that the coordinated activity of a parent corporation and its

wholly owned subsidiary must be viewed as that of a single enterprise for purposes of Section 1 of the Sherman Act, the above-cited lower court cases followed the Supreme Court's reasoning in *Copperweld* by examining the facts of the particular relationship at issue to determine whether a "unity of interests" existed such that concerted activity was not possible. *See Williams*, 999 F.2d at 447 ("whether corporate entities are sufficiently independent requires an examination of the particular facts of each case"); *Eleven Line, Inc.*, 1997 WL 135684 at *7 (national soccer association was found to have ultimate control over affiliated state organization such that they constituted a single economic unit, incapable of conspiring). In the present case, the Amended Complaint reveals a unity of interests between Snelling and its franchisees such that these two entities are incapable of conspiring within the meaning of Section 1.

The provisions of the franchise agreement that the Plaintiffs cite in the Amended Complaint inextricably link the economic interests of Snelling and its franchisees and create a relationship in which Snelling maintains almost complete control. For example, Snelling owns all of the improvements, enhancements, advertising, public relations programs, or inventions developed by its franchisees as well as all goodwill associated with Snelling's proprietary marks. In addition, all clients of a Snelling franchise are automatically clients of Snelling, and franchise clients pay Snelling directly for all services rendered by the franchise. Lastly, Snelling controls where its franchises are located and who its franchisees can compete with.

Plaintiffs argue that Snelling is capable of conspiring with its franchisees because its corporate stores compete with its franchises.[2] However, Plaintiffs offer absolutely no evidence to demonstrate that the corporate stores actually compete with the franchises and "[c]onclusory allegations and unwarranted deductions of fact are not admitted as true" by a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992) (quoting, *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir.1974)). Although the franchise agreement allows solicitation of clients without territorial restrictions, this one clause does not create a conflict of interests between Snelling and its franchisees that would negate the common interests that are created by the rest of the franchise agreement. Moreover, the Plaintiff offers no case law to support its assertion that the presence of competition between corporate stores and franchises renders an otherwise singular enterprise capable of concerted activity under Section 1.

■ Even if Snelling is capable of conspiring with its franchisees for the purposes of Section 1, the Amended Complaint reveals no evidence that Snelling did conspire with any of its franchisees. According to the Amended Complaint, Snelling's behavior was entirely unilateral.

---

**2.** In fact, the Plaintiffs have not argued anything because they did not respond to the Defendant's Motion to dismiss, they merely referenced their Amended Complaint, which they claim renders the Defendant's Motion moot. However, a review of the additions to the Original Complaint reveals a brief discussion of the Plaintiffs' beliefs that the competitive nature of Snelling's relationship with its franchisees makes this relationship different from that of traditional franchisors and franchisees. Although this Court does not appreciate the fact that it had to extract the Plaintiffs' response to the Defendant's Motion from the Amended Complaint, it is clear that the addition of conclusory language regarding competition was intended to respond to the Defendant's arguments regarding the ability of Snelling to conspire with its franchisees.

Franchisees were *required* to sign the franchise agreement and according to the Plaintiffs, the required agreement was so unfair to the franchisees as to be unconscionable. Moreover, it was not the franchise agreement itself, but the unilateral actions taken by Snelling, that allegedly harmed the Plaintiffs and unreasonably restrained trade. For example, although franchisees agreed to allow Snelling to decide where they could open a franchise, it was Snelling's specific decision to prevent Search from opening a franchise in Richardson, Texas that has allegedly hindered competition. Snelling could just as easily have used its power under the franchise agreement to strategically locate its franchises in order to foster competition and increase the overall efficiency of the Snelling enterprise. Along the same lines, although Snelling allegedly used information received pursuant to the franchise agreement to unfairly compete with its franchisees, it could just as easily have used the information to assist its franchisees and improve the franchises and the corporate stores. In both cases, it was the unilateral action of Snelling, and not the franchise agreement itself that is alleged to have hindered competition.

"[T]here can be no liability under § 1 in the absence of agreement." *Fisher v. City of Berkeley*, 475 U.S. 260, 266, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986) (citations omitted). Under the facts set forth in the Amended Complaint, Snelling and its franchisees were incapable of agreeing to restrain trade. Moreover, the facts fail to support the existence of an agreement, even if such an agreement would be cognizable under Section 1. Therefore, the Defendant's Motion to Dismiss the Sherman Anti-Trust Act claim is **GRANTED.**

## II  Application to Stay and Compel Mediation and Arbitration

In addition to their claim under Section 1 of the Sherman Anti-Trust Act,

Plaintiffs have asserted two claims under the Texas Business and Commerce Code. However, the Section 1 claim is the only claim arising under federal law and thus it is the source of this Court's original jurisdiction over this case. Under 28 United States Code section 1367, a district court has broad discretion to decline to exercise supplemental jurisdiction over pendant state claims if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Relevant factors to consider in the exercise of the court's discretion include judicial economy, convenience, fairness to the litigants, and comity. *See United Mine Workers*, 383 U.S. at 726, 86 S.Ct. 1130. The Supreme Court has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

In this case, the factors weigh in favor of dismissing the remaining state law claims and consequently denying the Defendant's request for a stay and an order of arbitration. This case is still in the early stages of litigation and there is no evidence that refiling this case in state court would create an undue burden on the parties. Moreover, the interests of comity dictate that Texas's interest in this case is greater than that of the federal judiciary now that there are no federal issues involved. For these reasons, the remaining claims in this case are **DISMISSED WITHOUT PREJUDICE** and the Motion for Stay and to Compel Arbitration is **DENIED.**

### *Conclusion*

For the foregoing reasons, Defendant's Motion to Dismiss the Plaintiffs' claim un-

der 15 U.S.C. § 1 is **GRANTED** and that claim is **DISMISSED WITH PREJUDICE.** Defendant's Motion for Stay and to Compel Arbitration is **DENIED** and the remaining state law claims are **DISMISSED WITHOUT PREJUDICE.**