In re SUNPOINT SECURITIES,
INC., Debtor.

Securities Investor Protection Corporation and Robert G. Richardson, Trustee of the Estate of Sunpoint Securities, Inc., Plaintiffs,

v.

Cheshier & Fuller, L.L.P.,
et al., Defendants.

Bankruptcy No. 99–6073.
Adversary No. 00–6068.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

April 23, 2001.

Tom Henson, Deron Dacus, Ramey & Flock, Tyler, TX, for Securities Investor Protection Corporation.

Michael L. Knapek, Emily Donahue, Jackson Walker L.L.P., Dallas, TX, for Robert G. Richardson, trustee.

Eric W. Pinker, Michael P. Lynn, Amy E. Davis, Dallas, TX, for defendants.

## MEMORANDUM OF DECISION DENYING DEFENDANTS' RESPECTIVE MOTIONS TO DISMISS

BILL G. PARKER, Bankruptcy Judge.

Plaintiffs, Robert G. Richardson as Trustee (the "Trustee") for the liquidation of the business of securities broker-dealer Sunpoint Securities, Inc. ("Sunpoint") and the Securities Investor Protection Corporation (the "SIPC") (collectively, the "Plaintiffs"), have brought this action against Defendants, Cheshier & Fuller, L.L.P., King Bourland, Jeff Cheshier, Jack Sprawls, David Stanley, solely as the representative of Harold Fuller, James Connor, Jack Savage, Bret Robertson, and John Doe (the "Defendants") seeking damages under various state law causes of action, such as negligence, negligent misrepresentation, breach of contract and breach of warranty, arising from the Defendants' alleged actions as the auditors for Sunpoint. Defendants have now moved to dismiss the complaint for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) and under the principles of mandatory abstention set forth in 28 U.S.C. § 1334(c)(2). Alternatively, the Defendants seek the dismissal of the Trustee's breach of contract claims and all of the SIPC's claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim.[1] For the reasons set forth below, the Defen-

1. There were actually two motions filed containing the same substantive arguments—one by Cheshier & Fuller, L.L.P., King Bourland and Jeff Cheshier, and a subsequent one by Jack Sprawls, David Stanley, solely as the representative of Harold Fuller, James Connor, Jack Savage, Bret Robertson, and John Doe (the self-named "Partner Defendants"). In considering these motions, the Court has reviewed the following materials: (1) Defendants' Brief in Support of Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction and, Alternatively, For Failure to State a Claim; (2) the Plaintiffs' Response to Motions to Dismiss for Lack of Subject Matter Jurisdiction and, Alternatively, For Failure to State a Claim and Brief in Support Thereof; and (3) the Defendants' Reply Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction and, Alternatively, For Failure to State a Claim.

dants' motions are denied. This memorandum of decision disposes of all issues currently pending before the Court.

### Factual Background

In considering the Defendants' motion, the facts alleged in the Plaintiffs' first amended complaint are presumed to be true. Throughout the 1990's, Sunpoint was a securities broker–dealer of which Van R. Lewis, Jr. a/k/a Van R. Lewis, III was the CEO, director, and controlling shareholder. In June, 1997 Sunpoint achieved the significant status of a "self-clearing broker," under which customer funds relating to the purchase and sale of securities would be directly subject to Sunpoint's custody and control through which Sunpoint could actually effectuate the purchase and sale of securities at the "street" level on behalf of its customers.[2] As a portion of its service as a "self-clearing broker," Sunpoint offered its customers access to various money market funds (the "Alliance Funds") as a means to manage the cash in their brokerage accounts. Idle cash in a customer's account was automatically swept on a daily basis into one of the Alliance Funds, all held in the name of Sunpoint as opposed to individual customer names, and such cash was also automatically remitted back into the customer's brokerage account when needed for securi-

ties purchases by the customer.[3] On a daily basis, Sunpoint calculated a single net amount, often in the millions of dollars, which was due to be wired to and from the various funds.[4]

After obtaining its new "self-clearing broker" status, Sunpoint, at the request of the National Association of Securities Dealers ("NASD"), sought to employ for the audit of its annual report an accounting firm with experience in the auditing of securities broker-dealers.[5] Such an auditor would, among other things, examine the broker-dealer's financial statements and internal financial controls and issue a written report as to its findings and recommendations.[6] In October, 1997, the accounting firm of Cheshier & Fuller (the "Firm") was retained by Sunpoint to fulfill that auditing responsibility.[7]

Almost immediately after Sunpoint began clearly securities trades for its customers and notwithstanding the potential for disclosure through the auditing process, Mr. Lewis began diverting customer funds in Sunpoint's possession for use by Sunpoint as well as for his own personal use.[8] This eventually included the improper diversion of substantial sums from the Alliance Funds, particularly when Sunpoint was in danger of being closed by the NASD in late December, 1997 due to an

---

2. Plaintiffs' First Amended Complaint at ¶ 10 and 11. Prior to this time, Sunpoint was operating on a "fully disclosed basis" whereby Sunpoint took orders from its customers for the purchase and sale of securities and sent them to a "clearing broker," which effectuated the sale or purchase at the "street level." Under this scenario, a customer's funds were never in Sunpoint's possession, but were rather sent directly to and received from the clearing broker, with Sunpoint eventually receiving a commission from the orders placed with that clearing broker. Id. at ¶ 10.

3. Id. at ¶¶ 12–16.

4. Id. at ¶ 15.

5. Id. at ¶ 17.

6. Id. at ¶ 21.

7. Id. at ¶ 17. Though Cheshier & Fuller is now a registered limited liability partnership under Texas law, it was a general partnership at the time the audit services were rendered and all of the individual defendants named in the complaint were general partners of that partnership. Id. at ¶ 6.

8. Id. at ¶ 26.

insufficient amount of "net capital."[9] By November, 1999, when the SIPC sought the entry of a protective decree on behalf of Sunpoint's customers,[10] over $25,000,000.00 in customer funds had been misappropriated by Lewis and his subordinates.[11]

In their complaint, Plaintiffs contend that the Defendants are liable for the Firm's failure to audit adequately Sunpoint's financial statements for the years 1997 and 1998. As a result of acts such as the Firm's failure to inquire into the original source for funds infused into Sunpoint by Lewis in December, 1997, which allegedly permitted Lewis and his subordinates to create the illusion that Sunpoint had sufficient net capital for its operations, or its failure to confirm the actual balances on deposit in the Alliance Funds, the Plaintiffs allege that the Firm wrongfully failed to uncover and disclose the true financial condition of Sunpoint in its audit reports, which it could have done, had the audits been conducted in accordance with generally accepted auditing standards ("GAAS") and the audit regulations of the Securities and Exchange Commission and the NASD. The Plaintiffs further allege that the Defendants

> ... knew or should have known that ....[its] engagement was (i) for the benefit of Sunpoint in making decisions with respect to the operations and conduct of its business; (ii) for the benefit of the SEC, NASD, other regulatory authorities and SIPC in making informed decisions with respect to Sun-

point; and (iii) for the benefit of Sunpoint's customers and creditors in making informed decisions with respect to entering into and maintaining business relationships with Sunpoint and relying on the system of regulatory oversight to assure themselves that Sunpoint was reasonably capitalized and not at risk of failure.;[12]

and that

> ... Sunpoint, its customers, creditors, and regulators, including the NASD and SIPC, relied on Defendants to apply the proper standards and expertise, to express the opinions, to make the certifications and to prepare or assist in the preparation of reports discussed herein for the purposes, among other of (i) providing reasonable assurance of the accuracy of financial data submitted directly or indirectly to the SEC, NASD, SIPC, customers and others, and generally made available to the public, thereby protecting Sunpoint from fraudulent activity by its officers, directors, agents, and employees and safeguarding the existence and use of Sunpoint's assets and assets held by Sunpoint on behalf of customers; (ii) determining whether Sunpoint could continue to engage in business as a securities broker-dealer; (iii) determining whether significant restrictions and alterations in the scope and nature of its operations would be required in order for Sunpoint to continue to engage in business as a securities broker-dealer; and (iv) making informed

---

**9.** Id. at ¶ 27.

**10.** That protective decree was entered on November 19, 1999 by the United States District Court for the Eastern District of Texas, Judge John H. Hannah, Jr. presiding, which commenced a liquidation proceeding for the protection of the customers of Sunpoint Securities, Inc., pursuant to 15 U.S.C. § 78eee(b) of the Securities Investor Protection Act (the

"SIPA"). Thereafter, in accordance with 15 U.S.C. § 78eee(b)(3), the District Court appointed Robert G. Richardson as the Trustee for the liquidation of Sunpoint.

**11.** Plaintiffs' First Amended Complaint at ¶ 28.

**12.** Id. at ¶ 38.

business decisions concerning the future operations of Sunpoint on the basis of accurate financial information.[13]

In sum, the Plaintiffs assert that the Firm's inadequate performance as Sunpoint's independent auditor deprived the customers, creditors, and regulators of "the full benefit of the regulatory oversight and early warning systems of which the auditor's audit and reports are crucial components," thereby precluding them from taking appropriate action.[14]

The Trustee brings this action against the Defendants as the bailee of the fund of customer property entrusted to Sunpoint by customers, as well as the representative of the estate of Sunpoint in liquidation.[15] The SIPC brings this action on its own behalf and as the subrogee to the net equity claims of Sunpoint's customers which have been paid by the SIPC.[16] The SIPC has provided to date over $25,000,000.00 for the payment of claims submitted by these customers and over $50,000.00 in administrative expenses of the liquidation.[17]

### Discussion

#### Lack of Subject Matter Jurisdiction

■■■ A case may be properly dismissed for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998). In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.2001); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir.1989), *quoting Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). However, the Court must accept all factual allegations in the plaintiff's complaint as true. *Id.*

■■■ "Federal courts are courts of limited jurisdiction, and bankruptcy courts are no exception. Their jurisdiction is wholly 'grounded in and limited by statute.'" *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir.1999), *quoting Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The boundaries of this Court's jurisdiction in the context of a liquidation proceeding under the Securities Investors Protection Act are defined by 15 U.S.C. § 78eee(b)(2)(A) which provides that:

> Upon the filing of an application with a court for a protective decree with respect to a debtor, such court[18]—
>
> (i) shall have exclusive jurisdiction of such debtor and its property wherever located (including property located outside the territorial limits of such court and property held by any other person

---

13. Id. at ¶ 24.

14. Id. at ¶ 41.

15. Id. at ¶¶ 1 and 43.

16. Id.

17. Id. at ¶ 42.

18. 15 U.S.C. §§ 78u(e) and 78aa, as incorporated into the SIPA by 15 U.S.C. § 78eee(a)(3), defines a court of competent jurisdiction as "the district courts of the United States and the United States courts of any territory or other place subject to the jurisdiction of the United States. . . ."

as security for a debt or subject to a lien);

(ii) shall have exclusive jurisdiction of any suit against the trustee with respect to a liquidation proceeding; and

(iii) except as inconsistent with the provisions of this chapter, shall have the jurisdiction, powers, and duties conferred upon a court of the United States having jurisdiction over cases under title 11, together with such other jurisdiction, powers, and duties as are prescribed by this chapter.

Thereafter, 15 U.S.C. § 78eee(b)(4) prescribes that:

Upon the issuance of a protective decree and appointment of a trustee, or a trustee and counsel, under this section, the court shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under title 11. The latter court shall thereupon have all of the jurisdiction, powers, and duties conferred by this chapter upon the court to which application for the issuance of the protective decree was made.

While the complaint filed by the SIPC and the Trustee cites only § 78eee(b)(4) and does not specify the precise section of § 78eee(b)(2)(A) from which this Court derives its jurisdiction to hear this dispute, the contents of the complaint reveal that this action can only be brought in this Court under the auspices of § 78eee(b)(2)(A)(iii) which, again, provides that this Court can exercise the same jurisdiction which it can exercise over a title 11 case, *except as inconsistent with the provisions of this chapter,* referring, of course, to the SIPA. Thus, the Court is presented with two questions: (1) could it properly exercise jurisdiction over this type of case if it was brought in connection with a case pending under title 11 and, if so, (2) would the exercise of such jurisdiction be inconsistent with the provisions of the SIPA?

■ The issue of subject matter jurisdiction in a title 11 bankruptcy proceeding technically involves an analysis of the jurisdiction of the district court. As applicable to litigation brought within the confines of a bankruptcy case, 28 U.S.C. § 1334(b) provides, in relevant part, that:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11. (emphasis added)

If a matter falls within one of those three distinct categories of bankruptcy proceedings, thereby giving the district court subject matter jurisdiction over that matter, then the district court may thereafter refer the matter to a bankruptcy court for that district under 28 U.S.C. § 157(a).[19] Thus, subject matter jurisdiction exists both on the district and bankruptcy court levels if the proceeding falls within one of the three prescribed categories listed in 28 U.S.C. § 1334(b). *See generally, Celotex Corp. v. Edwards,* 514 U.S. 300, 307–08,

---

19. 28 U.S.C. § 157(a) provides that:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

Pursuant to a general order entered on August 6, 1984, the U.S. District Court for the Eastern District of Texas has provided that all cases under title 11 or proceedings arising under title 11 or arising in or related to cases under title 11 are referred to the bankruptcy judge for consideration and resolution.

115 S.Ct. 1493, 1498–99, 131 L.Ed.2d 403 (1995).

■ A proceeding "arises under" Title 11 if the proceeding is created or determined by a statutory provision of Title 11. A proceeding "arises in" a case under Title 11 if, by its very nature, it could arise only in the context of a bankruptcy case or, in other words, it is a proceeding which would have no practical existence outside of the bankruptcy context, such as a bankruptcy administrative matter. Finally, a proceeding is "related to" a case under Title 11 if its outcome could conceivably have an effect on a bankruptcy estate. *In re Harnischfeger Industries, Inc.*, 246 B.R. 421, 432–33 (Bankr.N.D.Ala.2000). These provisions work in conjunction with each other—moving from those matters with the strongest bankruptcy connection [those "arising under"] to those matters which are only "related to" the bankruptcy proceeding. Thus, it is usually unnecessary for a court to make a determination as to which precise category applies to a particular matter, so long as it determines that it has, at the least, "related to" jurisdiction under § 1334. *Matter of Zale Corp.*, 62 F.3d 746, 752 (5th Cir.1995), (*quoting In re Walker*, 51 F.3d 562, 569 (5th Cir.1995))["For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under,' 'arising in a case under,' or 'related to a case under,' title 11. Instead, to ascertain whether jurisdiction exists, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."](citations omitted).[20] The Defendants assert that the claims brought by the SIPC and the Trustee do not fit into any of the § 157(a) categories. The Trustee and the SIPC assert that the Court has "related to" jurisdiction to hear this dispute.

■ The parameters of subject matter jurisdiction possessed by a bankruptcy court, as a unit of the district court, under the "related to" jurisdiction of § 1334(b) have been frequently addressed. A matter is "related to" a bankruptcy case if "the outcome could conceivably have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987).[21] In later affirming and clarifying that standard in *In re Walker*, 51 F.3d 562 (5th Cir.1995), the Fifth Circuit stated that an action is "related to" a bankruptcy case if:

> ... the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts the handling and administration of the bankrupt estate.

51 F.3d at 569 (emphasis added).

Thus, if a dispute can even conceivably have an effect on the bankruptcy estate, then the matter is "related to" the bankruptcy case, the required nexus exists between that dispute and the bankruptcy

---

**20.** *But see, Simmons v. Johnson, Curney & Fields, P.C. (In re Simmons)*, 205 B.R. 834, 842–44 (Bankr.W.D.Tex.1997)[finding that this general observation does not render "nugatory" the two remaining "prepositional qualifications" which define bankruptcy jurisdiction under § 1334 and holding that certain malpractice claims were properly classified as "arising in" the bankruptcy, though the claims were not "related to" the bankruptcy because they had no effect on the estate.].

**21.** *See also Celotex*, 514 U.S. at 308 n. 6, 115 S.Ct. 1493 (noting that the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have adopted this test, which originated in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984)). "The key word in the ... *Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999).

case, and the bankruptcy court, sitting as a unit of the district court, has subject matter jurisdiction to hear the dispute under 28 U.S.C. § 1334(b). As the Fifth Circuit observed in *Zale:*

> [Section 1334's] reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum. A secondary purpose is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate.

*Zale,* 62 F.3d at 752 (citations and emphasis in original omitted). Although it is not limitless, the "related-to" jurisdiction of the district court is broadly conferred so as to "avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate." *Id., quoting Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 787 (11th Cir.1990). This analysis was expressly endorsed by the United States Supreme Court in *Celotex,* in which the Supreme Court noted that ". . . the 'related to' language of § 1334(b) must be read to give district courts [and thus bankruptcy courts under § 157(a) ] jurisdiction over more than simple proceedings involving the property of the debtor or the estate." 115 S.Ct. at 1499.

Based upon the broad definition of a "related to" proceeding, the cause of action asserted by the Trustee and by the SIPC, if brought in a bankruptcy context, certainly falls well within the confines of "related to" jurisdiction under 28 U.S.C. § 1334(b). The Trustee's effort to recover damages under tort and/or breach of contract could more than conceivably have an effect on the administration of the liquidation estate since the proceeds of any recovery on the Trustee's claim will be available for distribution on claims. Notwithstanding the fact that, if were it not for the SIPA liquidation, this lawsuit would likely be conducted in state court, jurisdiction over this dispute is also conferred upon this Court by § 1334(b) because the outcome "could alter the [estate's] rights, liabilities, options, or freedom of action," *Bass,* 171 F.3d at 1022, and because it furthers the legitimate purpose ". . . that all claims by and against the debtor can be determined in the same forum." *Zale,* 62 F.3d at 752. The same is true as to the SIPC claims, even if the Trustee was not considered necessary to the dispute, because any recovery by the SIPC will reduce the debt owed to the SIPC by the Sunpoint estate and will clearly affect the amount of property in the estate. *Id.*

Therefore, this Court has subject matter jurisdiction to hear this dispute under 15 U.S.C. § 78eee(b)(2)(A)(iii), unless the exercise of such jurisdiction would be inconsistent with the provisions of the SIPA. The Defendants assert that, even if "related to" jurisdiction exists under 28 U.S.C. § 1334(b), this Court's jurisdiction to hear this type of dispute is "significantly circumscribed" by the SIPA itself. However, the Defendants offer no statutory language in the SIPA in support of such a contention and, in fact, the specific language of the SIPA belies that interpretation.

Congress clearly specified that liquidation proceedings under the SIPA would be conducted by the bankruptcy court. 15 U.S.C. § 78eee(b)(4), in a section entitled

"Removal to Bankruptcy Court," directs that a district court which issues a protective decree and appoints a trustee under the SIPA shall

> ... forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under title 11. The latter court shall thereupon have all of the jurisdiction, powers, and duties conferred by this chapter upon the court to which application for the issuance of the protective decree was made.

Courts have logically held that the "court of the United States" referenced by § 78eee(b)(4) is the bankruptcy court. *See, e.g., Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.),* 4 F.3d 1556, 1564 (10th Cir.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1061, 127 L.Ed.2d 381 (1994).

Further, the structure of the SIPA itself supports the legitimacy of adjudicating the Trustee's claim in federal court. 15 U.S.C. § 78fff(a) sets forth the purposes of a liquidation proceeding under the SIPA[22] and then § 78fff(b) immediately thereafter directs that

> To the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11.

*See, Keller v. Blinder (In re Blinder, Robinson & Co.),* 162 B.R. 555, 559 (D.Colo.1994)["This provision indicates that Congress intended SIPA liquidation proceedings to be treated, in most important respects, identical to a traditional bankruptcy case under title 11."]

Further the cases relied upon by the Defendants do not support the proposition that the exercise of "related to" jurisdiction by this Court under 28 U.S.C. § 1334(b), as incorporated into a SIPA context by 15 U.S.C. § 78eee(b)(2)(A)(iii), would be inconsistent with the provisions of the SIPA. While the court in *Redington v. Touche Ross & Co.,* 612 F.2d 68 (2d Cir.1979) also faced the question of whether a court presiding over a SIPA liquidation *at that time* had jurisdiction over a cause of action brought by a SIPA trustee for negligence, malpractice, breach of contract, and breach of warranty against the debtor's pre-petition accountants,[23] the jurisdictional analysis in that decision was based upon a recognition that the pre–1978 version of the SIPA jurisdictional statute[24]

---

**22.** 15 U.S.C. § 78fff(a) states that:

The purposes of a liquidation proceeding under this chapter shall be—

(1) as promptly as possible after the appointment of a trustee in such liquidation proceeding, and in accordance with the provisions of this chapter—

(A) to deliver customer name securities to or on behalf of the customers of the debtor entitled thereto as provided in section 78fff–2(c)(2) of this title; and

(B) to distribute customer property and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of customers to the extent provided in this section;

(2) to sell or transfer offices and other productive units of the business of the debtor;

(3) to enforce rights of subrogation as provided in this chapter; and

(4) to liquidate the business of the debtor.

**23.** The Second Circuit specifically noted that the case was commenced prior to the effective date of the revised Bankruptcy Code and that it was not considering the extent to which the 1978 SIPA amendments might have affected the jurisdiction of a court under the SIPA. *Redington,* 612 F.2d at 70, n. 2 and 3.

**24.** That version of § 78eee(b)(2) provided that, upon the filing of an application for a SIPA liquidation, the court to which application was made had exclusive jurisdiction of the debtor involved and its property wherever located with the powers, to the extent consis-

incorporated "two inconsistent jurisdiction provisions" from the then-Bankruptcy Act—one which granted to a court supervising a Chapter X reorganization jurisdiction to hear cases which could not have been brought in federal court absent bankruptcy jurisdiction and another provision which specifically denied such "plenary" jurisdiction to a court supervising a "straight" bankruptcy case. *Id.* at 71. In construing former § 78eee(b) in a manner consistent with the liquidation objectives of the SIPA, the Second Circuit concluded that the jurisdictional limitations imposed in straight bankruptcy cases superseded any jurisdictional grant based upon chapter X. Thus, it held that a court acting under the SIPA could not exercise such plenary jurisdiction over a claim based upon state law. However, due to the subsequent amendment of the SIPA jurisdictional provision, as well as the amended jurisdictional provisions of the revised Bankruptcy Code which it incorporates, under which subject matter jurisdiction in a bankruptcy case is no longer determined by what chapter of title 11 is invoked by the petition, the jurisdictional conflict addressed by *Redington* no longer exists. Its analysis must therefore properly remain isolated in its own jurisprudential purgatory and is not persuasive on the issue of jurisdiction in this case.

Neither does the decision in *Trefny v. Bear Stearns Securities Corp.*, 243 B.R. 300 (S.D.Tex.1999) support a prohibition upon the exercise of "related to" jurisdiction by a SIPA court. In ruling that the claims asserted by a SIPA trustee against a clearing agent would be settled by binding arbitration pursuant to the existing contract between the agent and the debtor, the *Trefny* court did not rule, as the Defendants suggest, that the SIPA court could not exercise subject matter jurisdiction over the claim. It simply found that the SIPA court did not have *exclusive* jurisdiction over the claim, sufficient to nullify the contractual obligation to arbitrate, since the dispute did not constitute a core proceeding under 28 U.S.C. § 157(b). This court agrees with the court in *Trefny* that "the fact that the SIPA confers jurisdiction on the bankruptcy court over property related to a liquidation, and the fact that the SIPA provides for removal to the bankruptcy court, does not transform every cause of action in an adversary proceeding pursued by a SIPA trustee into a core proceeding." *Id.* at 319. This Court further agrees that "... Congress did not intend the *exclusive* jurisdiction provision in 78eee(b) to *preclude* the litigation of every case involving the SIPA in a forum other than the bankruptcy court." *Id.* However, the fact that a bankruptcy court may not be the exclusive forum for the adjudication of a dispute does not in any way preclude such a court from exercising the concurrent jurisdiction which it properly possesses.

This Court concludes that it could properly exercise subject matter jurisdiction over this adversary proceeding had it been brought in connection with a case pending under title 11 and that there has been no demonstration that the exercise of such jurisdiction in this case would be even remotely inconsistent with the provisions of the SIPA. Thus, this Court concludes that it possesses subject matter jurisdiction to hear this dispute under 15 U.S.C. § 78eee(b)(2)(A)(iii) and the Defendants' motion to dismiss for want of subject matter jurisdiction must be denied.

### Proper Exercise of Judicial Power

■ The Defendants further "seek dismissal of this lawsuit under Article III of

---

tent with the purposes of this chapter, of a court of bankruptcy *and* of a court in a pro-

ceeding under chapter X of the Bankruptcy Act.

the United States Constitution and 28 U.S.C. § 1334(c) because Defendants are entitled to an Article III court for resolution of Plaintiffs' state law causes of action because (sic) the claims exclusively involve Defendants' 'private rights,'" *citing Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Defendants' [and Partner Defendants'] respective Motions to Dismiss* ¶ 2 at p. 3. Though stated in terms which confuse the exercise of subject matter jurisdiction with the exercise of judicial power by this Court, the issue regarding the proper exercise of judicial power is not illegitimate. Courts have recognized that the limitations on the exercise of Article III judicial power by an Article I bankruptcy court as outlined in the United States Supreme Court's *Marathon* decision are equally applicable in a SIPA context as they are in a bankruptcy context. *See, e.g., In re Investment Bankers, Inc.*, 4 F.3d at 1560–61 (10th Cir.1993)[applying the core/non-core definitions under 28 U.S.C. § 157(b) to an adversary proceeding under the SIPA]; *Trefny v. Bear Stearns Securities Corp.*, 243 B.R. 300, 319 (S.D.Tex.1999)[also applying the *Marathon* restrictions to a SIPA adversary proceeding]; *SIPC v. R.D. Kushnir & Co.*, 246 B.R. 582, 586 (Bankr.N.D.Ill.2000)[finding a contested matter under the SIPA to be a core proceeding under 28 U.S.C. § 157(b)(2)(A)].

The proper exercise of judicial power by an Article I court is not an examination of subject matter jurisdiction. As stated previously, if a title 11 bankruptcy proceeding falls within one of the three distinct categories of bankruptcy proceedings articulated by 28 U.S.C. § 1334(b), the district court has subject matter jurisdiction over that proceeding and may properly refer that matter to a bankruptcy court for that district under 28 U.S.C. § 157(a).[25] Stated simply, if a district court has subject matter jurisdiction over a proceeding under § 1334(b), then a bankruptcy court has subject matter jurisdiction over that proceeding under § 1334(b).

However, in both a bankruptcy and in a SIPA liquidation context, the fact that a bankruptcy court may have subject matter jurisdiction over a dispute does not necessarily mean that it can properly exercise the judicial power necessary to totally resolve it. In an effort to solve, as outlined in *Marathon*, the constitutional problems in the jurisdictional sections of the Bankruptcy Reform Act of 1978 arising from the attempted transfer of Article III judicial power to Article I bankruptcy judges,[26] Congress enacted 28 U.S.C. § 157(b) which classifies a matter as a "core" or "non-core" proceeding in an effort to prevent bankruptcy courts from exercising Article III judicial power which they do not possess. Thus, while § 157(a) may authorize the reference of a dispute to the bankruptcy court, the bankruptcy court's ability to exercise full Article III judicial power as to that dispute is determined by whether that matter is properly classified as a core or non-core proceeding. A bankruptcy court may fully hear and enter a final order or judgment to determine a core proceeding. A bankruptcy court may also hear a non-core proceeding that is otherwise related to a case under title 11 but, in the absence of the consent of all of the parties to the dispute, and notwithstanding the fact that it has subject matter jurisdiction over the dispute as a unit of

---

25. *See supra,* note 19.

26. As stated by Justice Brennan in the plurality decision in *Marathon,* the delegation of Article III judicial power to bankruptcy

courts is proper only for issues "at the 'core' of federal bankruptcy power." 102 S.Ct. at 2870–71.

the district court, the bankruptcy court cannot exercise full judicial power to enter a final order or judgment in that non-core proceeding. It only possesses the power to submit proposed findings of fact and conclusions of law for review and consideration by the Article III district court, prior to the entry of a final order or judgment by the district court. 28 U.S.C. § 157(c)(1). This satisfies the constitutional problems raised in *Marathon* because "the essential attributes of judicial power" are retained by the district court. *In re Clay*, 35 F.3d 190, 192–93 (5th Cir.1994).

Thus, the issue regarding the degree to which this Court may fully utilize Article III judicial power in this case does not establish grounds for its dismissal. The bankruptcy court, as a unit of the district court, possesses subject matter jurisdiction under 15 U.S.C. § 78eee(b)(2)(A)(iii) to adjudicate this case and the exercise of judicial power by this Court in this context is properly subject to the restraints imposed by 11 U.S.C. § 157. Thus, this Court concludes that this particular adversary proceeding is properly before this Court at this time and the fact that this lawsuit involves the adjudication of the Defendants' "private rights" presents no constitutional impediment which mandates the dismissal of this action.[27]

### *Mandatory Abstention*

▮▮▮▮ Similarly, the fact that the Plaintiffs' complaint implicates the Defendants' "private rights" does not mandate the dismissal of this lawsuit under the principles of mandatory abstention. As articulated in 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain from hearing a proceeding if: (1) a timely motion is made; (2) the proceeding is based on a state law claim or state law cause of action; (3) the proceeding is related to case under title 11; (4) the proceeding does not arise under title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. *In re Simmons*, 205 B.R. at 847. In this case, the final element is clearly absent. There is no parallel action by the Trustee or by the SIPC currently pending in a state court of appropriate jurisdiction. Thus, mandatory abstention does not apply in this case. *Schulman v. California (In re Lazar)*, 237 F.3d 967, 981 (9th Cir.2001)["... abstention can exist only where there is a parallel proceeding in state court."]; *Gober v. Terra + Corp. (Matter of Gober)*, 100 F.3d 1195, 1206 (5th Cir.1996)[noting that " § 1334(c)(2) would not require abstention in this case because no proceeding has been commenced in state court."]; *Ferretti Construction, Inc. v. Italimplanti of America, Inc. (In re Ferretti Construction, Inc.)*, 208 B.R. 396, 398 (Bankr. S.D.Tex.1995).[28]

### *Failure to State a Claim*

In the alternative, the Defendants seek the dismissal of certain claims brought by

---

**27.** This conclusion is in harmony with the fact that 15 U.S.C. § 78eee(b)(4) mandates the removal of the entire SIPA liquidation proceeding for Sunpoint Securities, Inc. into the bankruptcy court with all of the jurisdiction, powers, and duties conferred by the SIPA upon the district court, and the fact that 15 U.S.C. § 78fff(b) directs that the SIPA liquidation be generally conducted as though it were a chapter 7 liquidation under title 11.

**28.** The holding in *Lozano v. Swift Energy Co. (In re Wright)*, 231 B.R. 597 (Bankr.W.D.Tex. 1999), upon which the Defendants rely for the application of mandatory abstention, is actually in harmony with these cases because, in *Wright*, an action had already been commenced in the state court and was subsequently removed to the bankruptcy court. *Id.* at 599 and 602.

the Trustee and by the SIPC under Fed. R.Civ.P. 12(b)(6). Specifically, the Defendants assert that the "Trustee fails to state a claim for breach of contract and breach of warranty because a claim for professional malpractice sounds in tort alone." The Defendants further allege that the "SIPC fails to state claims for negligence and negligent misrepresentation, brought on behalf of Sunpoint customers, because the Defendants owed no legal duty to Sunpoint customers, who as third parties had no relationship to Defendants or the audit."

 Fed.R.Civ.P. 12(b)(6) provides that a party may move a court to dismiss an action for "failure to state a claim upon which relief can be granted." A motion to dismiss under Fed.R.Civ.P. 12(b)(6) cannot be properly granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir.2001); *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir.2000) *both citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A court must liberally construe the complaint in favor of the Plaintiff, accepting as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them,[29] *Piraino v. U.S. Postal Service*, 69 F.Supp.2d 889, 893–94 (E.D.Tex.1999), *citing Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050

(5th Cir.1982), and thereafter determine "whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir.1999).[30] Following such review, dismissal is proper under Rule 12(b)(6) only if there is either (1) "the lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Piraino*, 69 F.Supp.2d at 893, *citing Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).[31] It is well established that a motion to dismiss under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Shipp*, 199 F.3d at 260.

 Even under such strict standards, the Defendants' Rule 12(b)(6) motion against the Trustee is compelling. Both state and federal courts have long recognized that, under Texas law, professional malpractice claims sound solely in tort and are governed by negligence principles under which a plaintiff must show that "there is a duty owed to him by the defendant, a breach of that duty, that the breach proximately caused the plaintiff's injury and that damages occurred." *SMWNPF Holdings, Inc. v. Devore*, 165 F.3d 360, 364 (5th Cir.1999)[a legal malpractice case], *citing Barcelo v. Elliott*, 923 S.W.2d 575, 579 (Tex.1996) and *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex.1989).

---

**29.** A plaintiff, however, must allege specific facts, not conclusory allegations. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations and unwarranted deductions of fact are not admitted as true. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

**30.** In making that determination, a federal court must limit its inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint. The Court may also consider matters of which

it may take judicial notice, including matters of public record and items appearing in the record of the case. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); FED.R.EVID. 201(f).

**31.** A 12(b)6 dismissal may also be appropriate when the plaintiff has included allegations in his complaint disclosing some absolute defense or bar to recovery. *Korte v. Allstate Ins. Co.*, 48 F.Supp.2d 647, 650 (E.D.Tex.1999).

*See also* [as to accountant malpractice], *FDIC v. Ernst & Young,* 967 F.2d 166, 172 (5th Cir.1992) and *University Nat. Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ) and cases cited therein.

In opposing the Defendants' motion, the Trustee relies upon a singular statement issued by the Supreme Court of Texas in *Murphy v. Campbell,* 964 S.W.2d 265 (Tex. 1997) wherein the Court, in refusing to recognize a cause of action for breach of implied warranty relating to accounting services, stated that:

> There is no more need for an additional remedy for accounting malpractice than there is for medical malpractice. A plaintiff may obtain full redress in an action for *negligence or breach of contract.*

*Id.* at 269 (emphasis added).

Though the reference is phrased in the disjunctive, this Court is highly skeptical that such an isolated reference in a single opinion was intended to change existing Texas law. Other Texas courts are apparently not convinced either. Courts of appeals from throughout Texas have continued to recognize, even after the *Murphy* decision, that, although a professional malpractice case may be framed or labeled as a breach of contract, the claim is in the nature of a tort and the two-year statute of limitations applies. *Van Polen v. Wisch,* 23 S.W.3d 510, 515–16 (Tex.App—Houston [1st Dist.] 2000, pet. denied 2001), *citing Pham v. Nguyen,* 763 S.W.2d 467, 469 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *see also In re Godt,* 28 S.W.3d 732, 739 (Tex.App.—Corpus Christi 2000, no writ); *Tate v. Goins, Underkofler, Crawford & Langdon,* 24 S.W.3d 627, 635 (Tex.App.—Dallas 2000, no writ); *Eakin v. Acosta,* 21 S.W.3d 405, 410 (Tex.App.—San Antonio 2000, no writ), *citing Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988);

*Deloitte & Touche v. Weller,* 976 S.W.2d 212, 215 (Tex.App.—Amarillo 1998, pet. denied), *cert. denied,* 526 U.S. 1117, 119 S.Ct. 1765, 143 L.Ed.2d 795 (1999).

It certainly appears to the Court that the set of alleged facts supporting the Trustee's tort claims have simply been repackaged in order to assert claims under breach of contract and breach of warranty theories. However, the Court will deny the Defendants' motion to dismiss the contractual claims, but direct the Trustee to re-plead his complaint as to the contractual allegations. Any such amended complaint shall be filed within thirty (30) days and shall allege with specificity the exact contractual duties allegedly breached by the Defendants, how they were breached, the precise damages arising from such breaches and, in particular, how those breaches and the damages arising therefrom are distinct from the tort claims which he asserts. After the filing of the amended complaint, the Defendants are free to re-urge their motion in this regard.

■■■■ As to the Defendants' contention that the SIPC's causes of action for negligence and negligent misrepresentation must be dismissed under Rule 12(b)(6) because the Defendants do not owe a legal duty to either the SIPC or to Sunpoint's customers, that motion must also be denied.

There is clearly a distinction between the two causes of action asserted by the SIPC. The negligence cause of action is essentially a professional malpractice claim under which the SIPC must prove that there is a duty owed to it by the Defendants, a breach of that duty, and that the breach proximately caused damages suffered by the SIPC. *See Estate of Arlitt v. Paterson,* 995 S.W.2d 713, 719–20 (Tex. App.—San Antonio 1999, pet. denied), *citing Cosgrove v. Grimes,* 774 S.W.2d 662,

665 (Tex.1989). On the other hand, liability under a negligent misrepresentation theory is based not on professional duty, but rather upon an independent duty to avoid misstatements intended to induce reliance. *Safeway Managing General Agency, Inc. v. Clark & Gamble,* 985 S.W.2d 166, 169 (Tex.App.—San Antonio 1998, no writ). As recognized by the Supreme Court of Texas,

> ... a negligent misrepresentation claim is not equivalent to a [professional] malpractice claim. Under the tort of negligent misrepresentation, liability is not based upon breach of duty a professional owes his or her clients or others in privity, but on an independent duty to the nonclient based on the professional's manifest awareness of the nonclient's reliance on the misrepresentations and the professional's intention that the nonclient so rely. [citations omitted].... The theory of negligent misrepresentation permits plaintiffs who are not parties to a contract for professional services to recover from the contracting professionals.

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 792 (Tex.1999). The recognition of this tort by Texas courts is based upon § 552 of the Restatement (Second) of Torts which provides that a professional may be liable to a limited group of persons for whose benefit the professional intended to supply the information, or to whom the professional knew that the recipient intended to supply it.[32] *Federal Land Bank Ass'n. v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.,* 81 F.3d 606, 612 (5th Cir.1996), *cert. denied,* 519 U.S. 869, 117 S.Ct. 182, 136 L.Ed.2d 121.

In reviewing the complaint, the SIPC has clearly alleged that the Defendants owed a duty to the SIPC and to Sunpoint's customers to exercise reasonable care which they subsequently breached by their failure: (1) to properly audit the claims and liabilities of Sunpoint; (2) to properly calculate net capital; (3) to accurately present the financial condition of Sunpoint; (4) to confirm material balances held in Sunpoint's custodial accounts, and (5) to investigate, analyze, record and present Sunpoint's liabilities; all of which allegedly constituted a proximate cause of specified damages to the SIPC and Sunpoint's customers.

Similarly, as to the negligent misrepresentation claim, the SIPC has clearly alleged in its complaint that: (1) the Defendants knew or should have known that its audit opinion letters and other financial statements would be utilized and relied upon, not solely by Sunpoint, but also by the SIPC in evaluating regulatory compliance issues, as well as by Sunpoint's cus-

---

**32.** § 552 provides, in relevant part, that:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered:

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977).

tomers in their decisions as to whether to commence or continue a business relationship with Sunpoint; (2) that the representations made by the Defendants in its opinions, reports, and other financial statements were false; (3) that the SIPC and Sunpoint's customers justifiably relied upon the false representations in the conduct of their respective business affairs; (4) that the Defendants failed to exercise reasonable care or competence in making the representations in their various reports; and (5) that the negligent misrepresentations proximately caused damages to the SIPC and Sunpoint's customers in an amount in excess of $25,000,000.00.

Taking all of those allegations as true and construing the complaint liberally in its favor, the SIPC has clearly stated a valid claim for relief under both the negligence and negligent misrepresentation theories. Of course, surviving a Rule 12(b)(6) challenge to a claim is substantially different than ultimately prevailing on that claim and the vitality of the SIPC's claims may be more seriously challenged in the future. However, under the standards applicable at this stage of the proceedings, the SIPC's claims are sufficient to survive the Defendants' motion to dismiss under Rule 12(b)(6).

For all the foregoing reasons, the Court concludes that it has subject matter jurisdiction over this dispute and may properly exercise judicial power over this proceeding, that mandatory abstention does not prevent the adjudication of these claims in this forum, and that the Plaintiffs have stated causes of action against the Defendants sufficient to withstand a challenge under Fed.R.Civ.P. 12(b)(6). Accordingly, the respective motions of the Defendants to dismiss are each denied. Pursuant to Fed. R. Bankr.P. 7012(a), the Defendants are directed to file an answer to the Complaint of the Trustee and the SIPC within 10 days of the entry of this order.