**Kent J. ASHTON, Husband, Jacquelin R. Ashton, Wife, Plaintiff,**

v.

**CITY OF CONCORD, NORTH CAROLINA, John W. Crosby, in his individual and official capacity, Aviation Director, Robert E. Cansler, in his individual and official capacity, Chief of Police, W. Brian Hiatt, in his individual and official capacity, City Manager, Defendants.**

No. 1:03CV00183.

United States District Court, M.D. North Carolina.

Sept. 17, 2004.

Kent J. Ashton, Concord, NC, pro se.

Jaquelin R. Ashton, Concord, NC, pro se.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Plaintiffs Kent J. Ashton and Jacquelin R. Ashton filed this action against the City of Concord (the "City"), its former Aviation Director, John W. Crosby, its former Chief of Police, Robert E. Cansler, and its City Manager, W. Brian Hiatt, alleging a variety of constitutional, statutory, and common law claims stemming from the termination of a lease for an aircraft hangar at the Concord Regional Airport. Specifically, Plaintiffs have alleged claims under section 63–53 of the General Statutes of North Carolina and violations of their constitutional rights to freedom of speech, freedom of petition, procedural and substantive due process, and equal protection of the laws. Plaintiffs have also asserted claims for the "enforcement of unconstitutional conditions" (Am. Compl. Count VI) and state law claims of malicious prosecution, abuse of process, and civil conspiracy.[1] Now pending before the court are Plaintiffs' motion to supplement their complaint, Defendants' motion to dismiss, and Plaintiffs' motion for sanctions.

## I. BACKGROUND

Plaintiffs Kent J. Ashton and Jacquelin R. Ashton are co-owners of two aircraft, one of which they began to store at the Concord Regional Airport (the "Airport") in January 1995. In July 1998, Ashton[2] received permission to lease a "T-hangar" at the Airport. As a condition of this lease, Ashton was required to agree to the terms and conditions of the storage permit, which included a provision specifying that "the City of Concord reserves the right, as owner of the facility, to cancel [the Storage Permit] for any reason and not solely for breach of the conditions of this permit." (Am. Compl. ¶ 37 (alteration in original).)

In the spring of 1999, Ashton observed another tenant conducting maintenance on an aircraft in a hangar-in-common (i.e., a hangar shared by many aircraft, as opposed to Ashton's T-hangar). Under Airport regulations, repairs were not permitted in hangars-in-common. Ashton took photographs of this activity. Shortly thereafter, the Airport's Aviation Director, Defendant John W. Crosby, confronted Ashton and ordered him not to "walk around the Airport with his clipboard" and

---

1. In their response to Defendants' motion to dismiss, Plaintiffs withdrew their civil conspiracy claim. (Pls.' Br. Opp'n Mot. Dismiss at 19.) Since Defendants have filed an answer in this case, Plaintiffs cannot voluntarily dismiss this claim without stipulation by De-fendants or leave of court. Fed.R.Civ.P. 41(a). The court declines to grant such leave and will consider this claim when ruling on Defendants' motion to dismiss.

2. References to "Ashton" refer to Mr. Ashton.

to stop taking photographs on the Airport's property. (*Id.* ¶ 54.) Minutes after this encounter, Crosby and a Concord police officer instructed Ashton not to enter hangars-in-common. Later that spring, Ashton again took photographs of persons repairing their aircraft in hangars-in-common and T-hangars, and Crosby reported to W. Brian Hiatt, Concord's City Manager, that Ashton was harassing other tenants.

That summer, and perhaps partially related to his observations, Ashton filed a complaint against the City with the Federal Aviation Administration ("FAA"), pursuant to 14 C.F.R. part 16. After filing this complaint, Ashton continued to observe activities at the Airport that he believed supported his claims. In August 1999, Ashton was standing on a ramp between two hangars-in-common observing activities within the hangars. One of Crosby's subordinates saw Ashton and ordered him to leave and thereafter only enter the Airport at the entrance closest to his aircraft, proceed directly to his aircraft, and not linger at other points on Airport property. Plaintiffs contend that these rules were designed to prevent Ashton from gathering evidence for his FAA proceeding and speaking to other tenants.

In September, Ashton was observed talking to another tenant in front of the tenant's T-hangar. Crosby summoned Concord police officers, allegedly representing to them that Ashton had been in an area of the Airport where he was not permitted. Ashton maintained to the officers that he had been walking along a regular Airport thoroughfare after having conducted business in the Airport office. The officers left Ashton at his T-hangar,

but returned shortly thereafter and cited Ashton for trespassing, allegedly at Crosby's urging. Because Ashton thought Crosby's actions were false and malicious, he filed a state court action against him.[3] This action was dismissed for lack of subject matter jurisdiction.

On December 21, 1999, the City notified Ashton that his storage permit would be terminated effective December 31, 1999. Pursuant to Airport regulations, Ashton appealed the decision. A hearing was conducted by Assistant City Manager G. Tim Lowder. Lowder concluded that the City could terminate Ashton's permit for any reason and thus upheld the termination. Shortly after this decision, Ashton filed an action in state court (the "2000 Action") alleging violations of statutory and constitutional rights. Ashton also filed a second complaint with the FAA, alleging violations of federal aeronautics laws and the Constitution. Faced with threats of having his aircraft seized and sold, Ashton removed his aircraft from the Airport on February 26, 2000.

The 2000 Action was dismissed by the state trial court for failure to state a claim pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The North Carolina Court of Appeals affirmed that decision in an unpublished opinion, though Plaintiffs maintain the court did not reach all of the issues presented by Ashton's complaint. (*See* Am. Compl. ¶ 130.1.) The North Carolina Supreme Court declined to review the Court of Appeals' decision.

Plaintiffs continue to operate their aircraft from another airport more distant from their home. In 2001 and 2002, Plain-

---

**3.** Defendant Robert E. Cansler, then Concord's Chief of Police, filed an affidavit in this action asserting that Ashton had trespassed in a restricted area of the Airport, that Concord police had found Ashton on their own recog-

nizance, and omitting any mention of Crosby's role in the citation. This affidavit forms part of the basis for Plaintiffs' abuse of process claim.

tiffs reapplied for hangar leases at the Airport and were denied, despite the fact that the manager of their current airport considered them "model tenants." (*Id.* ¶ 137.) As a result of the 2001 denials, Plaintiffs filed a third complaint with the FAA. Plaintiffs subsequently filed this action on February 26, 2003.

## II. PLAINTIFFS' MOTION TO SUPPLEMENT THEIR COMPLAINT

■ Plaintiffs have moved, under Rule 15(d) of the Federal Rules of Civil Procedure, to supplement their amended complaint.[4] Rule 15(d) allows parties, by leave of court, to supplement their pleadings to set forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d). In addition, supplemental pleadings may set forth new causes of action so long as they are based on transactions, occurrences, or events happening after the original pleading was filed. *Coca–Cola Bottling Co. of Elizabethtown, Inc. v. Coca–Cola Co.*, 668 F.Supp. 906, 922 (D.Del.1987). The Fourth Circuit has held that supplemental pleadings are "[s]o useful ... and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears." *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir.1963); *see also Franks v. Ross*, 313 F.3d 184, 198 n. 15 (4th Cir.2002) (noting that the standards for Rule 15(d) are the same as the liberal standards for amending a pleading under Rule 15(a)); *Ramsey Group, Inc. v. EGS Int'l, Inc.*, 208

F.R.D. 559, 562 (W.D.N.C.2002) (same). Despite the fact that supplemental pleadings are freely allowed, the court retains the authority to impose such terms and conditions on them as are just. Fed. R.Civ.P. 15(d); *New Amsterdam*, 323 F.2d at 29.

■ Paragraphs 217–220, 222, and 224–230 of the proposed supplemental complaint primarily focus on findings recently announced by the FAA in its Final Decision and Order involving Plaintiffs' third FAA complaint. These FAA findings do not involve new acts by Defendants, but merely recite what the FAA concluded about the past interactions between the parties. Moreover, Plaintiffs acknowledge that this court has no power to overturn these FAA rulings. *See* 14 C.F.R. § 16.247(a) (noting that judicial review of FAA decisions lies with the courts of appeal). Because these paragraphs relate to findings not reviewable by the court and do not assert new acts by Defendants, Plaintiffs' motion to supplement their complaint as to these allegations will be denied.[5]

■ Paragraphs 221, 223, and 231–233 of the proposed supplemental complaint contain factual allegations of new or continuing acts by Defendants which Plaintiffs believe will augment their claims. Paragraphs 221 and 223 reassert the continued denial of Plaintiffs' lease applications by the Airport in contravention of their First Amendment rights. Paragraphs 231–233 refer to a newspaper interview given by Defendant Hiatt in which he indicated that

---

**4.** Plaintiffs have made two such motions, but in their second motion [41] they asked to withdraw their first motion [29] and replace it with the second. The court therefore considers the first motion voluntarily withdrawn and will consider only the second motion.

**5.** In a separate filing, Plaintiffs asked the court to take judicial notice of the ruling from the FAA. Defendants did not oppose this motion. Although it is unnecessary to supplement the complaint with the FAA's findings, the court will take judicial notice of them if they are relevant to the resolution of the other pending motions in this case.

Plaintiffs' continued pursuit of various legal remedies against the City would factor into future lease decisions. Because these paragraphs arguably support Plaintiffs' existing claims, their motion to supplement will be allowed as to these allegations.

■ Lastly, Plaintiffs seek to add a claim against Defendants for deprivation of their freedom of association. Plaintiffs assert, however, that "[o]ur Amended Complaint already alleges a Freedom of Association claim." (Pls.' Reply to Defs.' Mem. Opp'n Second Mot. Supplement at 5 (citing Am. Compl. ¶ 206.5).) Plaintiffs apparently seek to specifically denominate an independent freedom of association claim because they believe the FAA findings help prove that claim. The court will allow Plaintiffs' motion to add this additional claim; however, since Plaintiffs' amended complaint raised the issue, Defendants' motion to dismiss will be viewed as also addressing this new claim.

## III. DEFENDANTS' MOTION TO DISMISS

■ Among their arguments for dismissing Plaintiffs' complaint, Defendants contend that the doctrine of res judicata bars consideration of Plaintiffs' claims. Federal courts are required to give state court judgments the same preclusive effect that the courts of that state would give. 28 U.S.C. § 1738; *In re Heckert*, 272 F.3d 253, 257 (4th Cir.2001). A federal court must not give a state court judgment more or less preclusive effect than the state would give; the court must do only what the state's court would do in the same circumstances. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 361 (4th Cir. 1985).

■ Under North Carolina law, a previous judgment will preclude a subsequent action if the first decision was a final judgment on the merits, involving the same parties or parties in privity with them, and

the same cause of action. *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413–14, 474 S.E.2d 127, 128 (1996); *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993).

■ The 2000 Action was dismissed pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief could be granted. A dismissal with prejudice, including a dismissal under Rule 12(b)(6), is a final judgment on the merits for res judicata purposes. *Clancy v. Onslow County*, 151 N.C.App. 269, 272, 564 S.E.2d 920, 923 (2002); *Miller Bldg. Corp. v. NBBJ N.C. Inc.*, 129 N.C.App. 97, 100, 497 S.E.2d 433, 435 (1998); *see also* N.C. Gen. Stat. § 1A–1, Rule 41(b).

■ As to the parties, Ashton and the City appear as named parties in both proceedings. Mrs. Ashton is a co-owner of the aircraft which the City refuses to allow to be housed at the Airport; her rights in storing the aircraft are so linked with Mr. Ashton's that she is in privity with him with regard to these claims. *See Tucker*, 344 N.C. at 417, 474 S.E.2d at 130 (holding that for res judicata purposes, privity "denotes a mutual or successive relationship to the same rights of property") (quoting *Settle v. Beasley*, 309 N.C. 616, 620, 308 S.E.2d 288, 290 (1983)). The Ashtons' relationship is more than one of similar interests; as joint owners of the aircraft, both were harmed by the termination of the lease and both suffer alleged deprivations of their constitutional rights by the City's continued refusal to lease a hangar to them. *See id.* The individual Defendants sued in their official capacity, though not named in the previous lawsuit, are in privity with the City because they are essentially the same party. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("[A]n official-capacity suit is, in all re-

spects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.") (citations omitted); *Love–Lane v. Martin,* 355 F.3d 766, 783 (4th Cir.2004). The individual Defendants sued in their individual capacity are in privity with themselves sued in their official capacity. *See Northwestern Fin. Group v. County of Gaston,* 110 N.C.App. 531, 536–37, 430 S.E.2d 689, 693 (1993).

 Since the 2000 Action ended with a final judgment on the merits and the parties to this action are the same or in privity with those from the earlier action, the first two elements of the res judicata standard are met. The remaining question, therefore, is whether the claims asserted in this action are the same as those asserted in the 2000 Action.

 In addition to barring the same cause of action asserted in the original case, res judicata also bars closely related claims that could have been raised in the first case. *See Clancy,* 151 N.C.App. at 272, 564 S.E.2d at 923; *Caswell Realty Assocs. I, L.P. v. Andrews Co.,* 128 N.C.App. 716, 720, 496 S.E.2d 607, 610 (1998); *Chrisalis Properties, Inc. v. Separate Ouarters, Inc.,* 101 N.C.App. 81, 84, 398 S.E.2d 628, 631 (1990) (noting that res judicata is "intended to force parties to join all matters which might or should have been pleaded in one action"). Despite such broad pronouncements, federal courts applying North Carolina law have noted that North Carolina's application of res judicata is not as broad as the "transactional test"[6] applied in most states. *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.,* 320 F.Supp.2d 378, 391 (M.D.N.C.

2004); *accord Davenport v. North Carolina Dep't of Transp.,* 3 F.3d 89, 95 (4th Cir.1993) (calling North Carolina's position a "cautious and flexible adoption" of the transactional test). The North Carolina Supreme Court's decision in *Bockweg v. Anderson,* 333 N.C. 486, 428 S.E.2d 157 (1993), is illustrative of North Carolina's narrower approach. In that case, a husband and wife originally asserted medical malpractice claims against doctors who were alleged to have negligently damaged the wife's uterus during a Caesarean section, requiring her to undergo a hysterectomy. *Bockweg,* 333 N.C. at 490, 428 S.E.2d at 160. The plaintiffs also alleged that the doctors negligently failed to monitor the wife's nutrition and provide her with the proper vitamins, resulting in brain damage. *Id.* at 488, 428 S.E.2d at 159. The plaintiffs dismissed without prejudice the claim related to the wife's reproductive organs, settled with some of the defendants on the brain damage claim, and proceeded to trial as to the remaining defendants on the brain damage claim. *Id.* A jury found that the remaining defendants were not liable on the brain damage claim. *Id.* at 489, 428 S.E.2d at 159,.

The plaintiffs subsequently filed a new action against the same defendants in state court, reasserting their claims regarding the loss of the wife's reproductive organs. *Id.* The North Carolina Supreme Court held that res judicata did not bar the action because the plaintiffs had not "merely change[d] their legal theory" but were seeking a remedy for a distinct harm resulting from a distinct negligent act. *Id.* at 494, 428 S.E.2d at 163. Had the court applied the pure transactional test, the plaintiffs' renewal of their claim regarding the wife's reproductive organs might have

**6.** The transactional test, as applied to federal cases in the Fourth Circuit, calls on courts to consider whether "the new claim arises out of [the] same transaction or series of transac-

tions as the claim resolved by the prior judgment." *Keith v. Aldridge,* 900 F.2d 736, 740 (4th Cir.1990).

been barred since both negligent acts occurred during the same hospital stay and were caused by the same defendants. *See Davis,* 320 F.Supp.2d at 391–92.

 Plaintiffs' claims in this case appear to be nearly identical to those in the 2000 Action. In their present complaint, Plaintiffs allege that the 2000 Action involved violations of section 63–53 of the General Statutes of North Carolina, Plaintiffs' due process rights, and "various violations of 42 U.S.C. § 1983." (Am. Compl.¶ 126.) Ashton also argued to the North Carolina Court of Appeals that his claims in the 2000 Action arose under § 1983.[7] *Ashton v. City of Concord,* No. COA00–921, slip op. at 3, 144 N.C.App. 722, 548 S.E.2d 850 (N.C.Ct.App. July 3, 2001). Plaintiffs continue to maintain that these constitutional and statutory concerns have not been addressed by the state courts. (*See, e.g.,* Am. Compl. ¶¶ 130.1, 151.) The Court of Appeals did, however, consider these issues and ruled that Ashton had not alleged facts showing a deprivation of rights guaranteed by the Constitution or laws of the United States as required to state a claim under § 1983. *Ashton,* slip op. at 5, 144 N.C.App. 722, 548 S.E.2d 850. Moreover, the Court of Appeals concluded that section 63–53 did not create a right to lease hangar space at the

Airport. *Id.* at 6, 144 N.C.App. 722, 548 S.E.2d 850.

 The constitutional and statutory issues raised in this action all arise from the same harm that prompted the 2000 Action: the termination of the T-hangar lease. Plaintiffs attempt to rehabilitate their claims in this case by arguing that they are the result of continuing violations and thus accrued after the filing of the 2000 Action. (*See, e.g.,* Am. Compl. ¶ 149; Pls.' Br. Opp'n Mot. Dismiss at 8.) A continuing violation, however, "is occasioned by continual unlawful acts, not continual ill effects from an original violation." *National Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1166 (4th Cir.1991) (quoting *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981)). Plaintiffs have argued that their physical exclusion from the Airport beginning February 26, 2000, after the 2000 Action was filed, is a new harm that created a new cause of action. Plaintiffs' position is incorrect. Any harm to Plaintiffs occurred when the lease to the T-hangar was terminated, or, at the latest, when the decision was affirmed on January 10, 2000, not when Plaintiffs were forced to remove their aircraft. The removal of the aircraft was merely an ill effect of the original alleged violation and does not constitute an independent harm upon which to base new claims. *See id.* at 1167 (holding

---

7. Plaintiffs have filed a motion asking this court to exclude much of the evidence Defendants included with their motion to dismiss, which includes the briefs submitted by Ashton to the North Carolina Court of Appeals. Plaintiffs are correct that when considering motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts generally must confine their review to the complaint and documents attached to it, or convert the motion into one for summary judgment. *See, e.g., Gay v. Wall,* 761 F.2d 175, 177 (4th Cir.1985); *Arbia v. Owens–Illinois, Inc.,* No. 1:02CV111, 2003 WL 21297330, at *1 n. 1 (M.D.N.C. June 4, 2003). When considering a motion to dismiss based

on res judicata, however, "a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Andrews v. Daw,* 201 F.3d 521, 524 n. 1 (4th Cir.2000). Plaintiffs agree that the court may properly consider the complaint from the 2000 Action and the Court of Appeals' opinion in that case. With these two documents and Plaintiffs' complaint in this case, the court does not need to consider the documents Plaintiffs seek to have stricken to understand the nature of the 2000 Action. Plaintiffs' motion to exclude exhibits B–E of Defendants' motion to dismiss will be denied as moot.

that the plaintiff could not make out a Takings Clause claim when the defendant city ordered it to remove its billboards since any harm had accrued years earlier when the ordinance restricting billboards was enacted). Likewise, the City's continued denials of Plaintiffs' applications for hangar leases do not constitute independent harms upon which new claims could be based. The harm Plaintiffs suffered was the loss of their hangar. Having lost the hangar, continued denials of additional applications deprived Plaintiffs nothing which they possessed or, according to the Court of Appeals' decision, had a right to possess. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 189 (4th Cir.1999) (holding that refusals to reconsider a highway placement decision did not revive the limitations period for the original decision); *Piraino v. United States Postal Serv.*, 69 F.Supp.2d 889, 897 (E.D.Tex.1999) (holding that repeated denials of reinstatement to employment after the original denial do not constitute an actionable continuing violation). Because Plaintiffs cannot show that their statutory and constitutional claims, as well as their civil conspiracy claim, are based on harms that occurred after the filing of the 2000 Action, they cannot maintain these claims should not have been raised at that time. Because these claims stem from the same harm that created the claims in the 2000 Action, they form part of the "same cause of action" as was raised there, and as such are barred from consideration by res judicata.[8] Accordingly, Defendants' motion to dismiss will be granted as to these claims.

 The same result does not apply to Plaintiffs' claims of abuse of process and malicious prosecution. These claims were not raised in the 2000 Action and were triggered not by the termination of the T-

hangar lease, but by Ashton's citation for trespassing and the prosecution of that citation. Although the arrest relates to the transactions at issue in the other claims, this situation is like *Bockweg*, where factually related claims involving the same parties were not barred by res judicata because they were premised on two different wrongful acts leading to two different injuries. *See Bockweg*, 333 N.C. at 493, 428 S.E.2d at 162. The court cannot conclude that the abuse of process and malicious prosecution claims form part of the "same cause of action" as the 2000 Action, and as such res judicata does not bar consideration of these claims.

Despite this ruling, the court declines to exercise supplemental jurisdiction over the two remaining state common law claims because all the federal claims in this action have been dismissed. *See* 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.... [I]f the federal claims are dismissed before trial ... the state law claims should be dismissed as well."). Defendants' motion to dismiss will thus be granted in its entirety.

## IV. PLAINTIFFS' MOTION FOR SANCTIONS

 Lastly, Plaintiffs have moved for sanctions against Defendants under Rule 11 of the Federal Rules of Civil Procedure. The decision to impose sanctions under this Rule is left to the discretion of the court. *Ost–West–Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 177 (4th Cir.1998). Plaintiffs assert two grounds on which they argue sanctions should be granted.

---

**8.** Plaintiffs argue that such a ruling grants the City tacit authority to continue to violate the law. This argument is undercut, however, by the ruling of the state courts (and the FAA) that the City has not violated federal or state law with regard to Plaintiffs.

First, Plaintiffs argue that Defendants have misled the court by stating in their brief in support of their motion to dismiss that "Mr. Ashton was convicted of misdemeanor trespass in Cabarrus County District Court on December 15, 1999." (Defs.' Mem. Supp. Mot. Dismiss at 5.) Plaintiffs contend that this statement is false and misleading because Ashton took advantage of a North Carolina statute granting him the right to appeal his district court conviction and receive a trial de novo in Superior Court, at which time the charges were dismissed by the District Attorney. *See* N.C. Gen.Stat. § 15A-1431(b) ("A defendant convicted in the district court before the judge may appeal to the superior court for trial de novo with a jury as provided by law."). Under North Carolina law, once a defendant requests a trial de novo, "[t]he judgment appealed from is completely annulled and is not thereafter available for any purpose." *State v. Sparrow,* 276 N.C. 499, 507, 173 S.E.2d 897, 902 (1970); *see also Blackledge v. Perry,* 417 U.S. 21, 22, 94 S.Ct. 2098, 2100, 40 L.Ed.2d 628 (1974) ("When an appeal is taken ... the slate is wiped clean; the prior conviction is annulled."). Plaintiffs thus contend that Defendants have misrepresented the history of the criminal proceedings by stating that Ashton was "convicted."

Plaintiffs' contentions are insufficient to warrant an award of sanctions for two reasons. First, Defendants note elsewhere in their brief that Ashton sought trial de novo in Superior Court and that the charges were ultimately dismissed by the District Attorney. Perhaps it would have been better for Defendants' counsel to include this information earlier in their brief, when Ashton's conviction was first mentioned, but the delayed inclusion of this information did not mislead the court. Second, despite the broad language of the North Carolina Supreme Court regarding the effect of an appealed district court

conviction, such convictions, even when dismissed on trial de novo in Superior Court, can be considered as at least some evidence of wrongdoing in a later civil action. *Williams v. Pee Dee Elec. Membership Corp.,* 130 N.C.App. 298, 302, 502 S.E.2d 645, 648 (1998); *see also United States v. Martin,* 378 F.3d 353, 358–59 (4th Cir. 2004) (allowing, for federal sentencing purposes, the counting of a conviction in district court that was on appeal to superior court). Thus, although the court did not need to consider evidence of Ashton's conviction and the later dismissal of the charges, North Carolina law dictates that the court could have considered this information as at least some evidence of wrongdoing.

Plaintiffs' second argument for sanctions stems from Defendants' characterization of certain Airport regulations. The relevant regulations read:

> No person shall enter upon the field area, utilities and service rooms or areas, or other areas as may be designated RESTRICTED except[:]
>
> a. Persons assigned to duty therein;
> b. Persons authorized by the Aviation Director;
> c. Business representatives under proper supervision in the conduct of their affairs with the FBO or other tenants.

(Pls.' Br. Supp. Mot. Sanctions Ex. 3.)

Plaintiffs argue that Defendants misstate these rules when they assert that the rules prohibit entry into restricted areas except by "persons assigned to be in those areas, persons authorized by the Aviation Director, and tenants having business in those areas." (Defs.' Mem. Supp. Mot. Dismiss at 2.) Specifically, Plaintiffs argue that no provision of the rules restricts access to "tenants having business in [restricted] areas." Plaintiffs maintain that

this distinction is critical because it refutes Defendants' argument that Ashton's lease was terminated due to his entry into areas where his presence was unnecessary.

Defendants respond that their interpretation draws upon other parts of the regulations, including a section that provides:

> All shops, garages, equipment and facilities are expressly for the conduct of the owner's or lessee's business and operations. No persons other than employees of the City or lessee shall make use of these facilities or loiter around such premises without individual and specific permission of the City or lessee.

(Defs.' Mem. Supp. Mot. Dismiss Ex. A at 43.) Defendants also rely on an affidavit of Defendant Crosby which notes that, pursuant to his lease, Ashton was only permitted to enter areas necessary for his use of the Airport, not all restricted areas. In light of these other considerations, Defendants argue that their interpretation of the regulation is appropriate.

Language in statutes, regulations, or contracts is frequently subject to more than one interpretation. That the parties to a lawsuit might present differing views on the meaning of certain language is hardly surprising. The court concludes that Defendants' interpretation of the regulations is reasonable, and thus not worthy of sanction under Rule 11. For these reasons, Plaintiffs' motion for sanctions will be denied.

## V. CONCLUSION

For the reasons stated herein, Plaintiffs' motion to supplement their complaint will be granted in part and denied in part. Defendants' motion to dismiss will be granted. Plaintiffs' motion for sanctions will be denied.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.